UNITED STATES of America, Appellee,

v.

Donald Joseph RUSSO, Appellant.

No. 11949.

United States Court of Appeals Fourth Circuit.

Argued May 6, 1968.

Decided July 19, 1968.

Norman E. Williams and Samuel F. Gantt, Durham, for appellant.

William H. Murdock, U. S. Atty. (H. Marshall Simpson, Asst. U. S. Atty., on brief), for appellee.

Before SOBELOFF, WINTER and BUTZNER, Circuit Judges.

SOBELOFF, Circuit Judge:

From his conviction for knowingly transporting interstate a stolen vehicle in violation of 18 U.S.C. § 2312, Donald Russo appeals. He assigns as one error the trial judge's refusal to conduct a hearing out of the presence of the jury, in accordance with the procedure outlined by this court in United States v. Inman, 352 F.2d 954 (1965), to determine whether two statements of the defendant, offered through the testimony of a government witness, had been made voluntarily. The other contention raised by appellant is that certain comments by the judge unduly pressured the jury into reaching its verdict.

At trial, the parties stipulated that the vehicle described in the indictment had been stolen and that it was driven by defendant and a companion, Joseph Sangiorgio, from New York City to Durham, North Carolina. It was Russo's defense, however, that at the time of the trip he was ignorant of the fact that the vehicle he was driving had been stolen. When first apprehended on a used car lot, and confronted with the fact that he was not the registered owner of the automobile, Russo's story to the police officer was that he had come to Durham to sell the car for his brother-in-law whose name appeared on the registration card. Both Russo and Sangiorgio were then taken to the police station, where they were fully informed of their rights and interrogated by F.B.I. agent Miller. Although they declined to make any statements concerning the suspected crime, Russo admitted that he did not have a brother-in-law and stated that he had come to Durham to buy cigarettes to avoid New York's Tobacco Tax. Both men were then released. Approximately five weeks later, Russo was arrested, tried and convicted of violating Section 2312.[1]

Agent Miller's testimony at trial, as far as it is relevant to this appeal, pertains to two brief encounters he had with defendant between his arrest and trial. According to this witness, shortly after the court appointed counsel for Russo, the latter, without invitation and entirely voluntarily, entered Miller's office and "made some comment about having told me, hadn't I known before that he had $3,000.00 to buy cigarettes at the time." The second occasion was immediately after Russo's arraignment, when, according to Miller, the defendant approached him and a companion as they stood in the lobby of the Federal Post Office and volunteered that "he [Russo] had borrowed the car in New York and had obtained $3,000.00 to purchase cigarettes in Durham from some person whom he did not identify, and he said that he had come down and it had been his intention to return to New York and tell the person * * * that he had been apprehended and that both the car

1. Indicted for the same offense, Sangiorgio had not been apprehended at the time of Russo's trial.

and the cigarettes had been confiscated, and he was going to keep both, the proceeds from both."

Counsel for defendant vigorously objected to the admission of these statements and requested a hearing out of the presence of the jury to determine whether they had been voluntarily made. In answer to these objections the trial judge merely opined that "[i]t looks like the posture is that he just voluntarily walked in," and that "[t]he way this looks is that this was a voluntary act on his part." No hearing to establish this was conducted.

Articulating a procedure for determining the admissibility of incriminating statements, this court, speaking through Judge Bryan, in United States v. Inman, supra at 956, stated:

"To assure the accused complete protection, the procedure should substantially be this. On proffer of the confession, even though there be no objection, the court should let the jury withdraw, and then take evidence upon the confession and its factual setting. On this voir dire the defendant may testify without prejudice to his privilege not to take the stand before the jury, but he may be examined or cross-examined only with regard to the origin and character of the confession, not upon his innocence or guilt. The court will thereupon independently determine whether the confession is admissible."

Attempting to distinguish the instant case, the prosecutor argues that agent Miller's testimony involved an exculpatory statement and not a "confession, admission, or incriminating statement."

 On the facts here presented, we are unable to perceive the suggested distinction. The single issue contested below was whether Russo knew that he was driving a stolen car on his trip from New York to North Carolina. The challenged statement bears directly on this point, indicating that he took the car with no intention of returning it. Contrary to the prosecutor's insistence in oral argument, we conclude that the statements were clearly incriminating. In fact, short of a full confession, it is difficult to imagine more damaging testimony. Moreover, even if we assume the correctness of the Government's assessment of the statement, we must take into account the Supreme Court's explicit admonition to us not to distinguish between inculpatory and exculpatory statements when determining admissibility. Miranda v. State of Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The force of logic dictates this conclusion. Whether intended to be inculpatory or exculpatory when made, the statement is proffered by the Government for the sole purpose of establishing guilt. In the one case, it represents a simple admission of the crime; in the other, it is used to discredit defendant's contentions. While not always equally incriminating, both are clearly damaging and must not be considered by the trier of fact until voluntariness has been independently established.

 Ordinarily, the teaching of Inman is not complied with by a superficial observation expressing no more than an intuitive impression that a defendant's statement was voluntary, and an inquiry specifically directed to this point is indicated. In the present case, however, the omission was rendered harmless when defendant took the stand and gave a version paralleling Miller's almost verbatim. Russo's own testimony did not suggest that the atmosphere surrounding either conversation was other than as Miller represented.[2]

2. There is no suggestion that the defendant was forced to testify by reason of the testimony of the Government's witness in violation of the Inman rule. Indeed the record contains an intimation that the defendant's trial counsel welcomed agent Miller's testimony. At one point counsel said of Miller's testimony that it "is just about my whole case. I don't know whether I'd even have to put him

Finally, the appellant complains that he was prejudiced by undue pressure exerted by the judge upon the jury. The basis of this assertion is that although the judge had told the jurors before they were empanelled, that the "Russo matter" was the only case to be heard that week, nevertheless, after they had deliberated for two hours, he recalled them and inquired whether they could reach a verdict within the next half hour. The judge disclosed the purpose of this inquiry by adding the observation that if they could not conclude their consideration of the case within that time it would be necessary to send them home, to return the following day. We discover no basis for the appellant's criticism. First, no objection was raised at trial. See Rule 30, F.R.Crim.P. Second, the trial judge has considerable discretion, in ordering the course of the trial, to ask the perfectly neutral question as to whether the convenience of all concerned will be better served by recessing to the next day or proceeding without interruption. The first statement, that Russo's case was the only one on the docket for that week, was clearly innocuous, and the second, reproduced in the margin,[3] was perfectly reasonable and in no way prejudicial to the defendant. Contrary to the contention made, the statements taken together appear to us to indicate the judge's desire not to pressure the jurors. They did not even remotely suggest that any juror should, in order to achieve unanimity, acquiesce in a view he did not conscientiously hold.

The judgment of the District Court is Affirmed.

on the stand, but I'd just like to step out here and talk with him in a second, just advise him of his rights and what I think."

3. "Ladies and gentlemen of the jury, I had hoped that maybe you would have been able to have reached a verdict by this time; however, in any case that is before a Court is an important case; and I would not want to pressure you from the standpoint of time; I make this inquiry; this is the only case that you will be asked to consider this week; and if it is a belief of a substantial number of you that a verdict could be reached within say a half an hour, I think it would be the course of wisdom for us to stay here, and for you to deliberate rather than to take an additional day; and by that, I mean by the time we go home and come back, it will be an additional day tomorrow. I do not want you to tell me how you stand, or anything, but I simply ask this question—let me have a show of hands who might think that an additional thirty minutes deliberation could possibly lead to a decision, a verdict."