**UNITED STATES of America,
Appellee,**

v.

**Theodore C. OWENS et al., Appellants.**

**Nos. 74–1308—74–1311.**

United States Court of Appeals,
Fourth Circuit.

Argued March 3, 1975.

Decided Sept. 24, 1975.

**21.** 495 F.2d at 462.

Joseph L. Gibson, Jr., Washington, D. C. [court-appointed counsel], for appellant in No. 74–1308.

Robert Allen Sapero, Baltimore, Md. [court-appointed counsel], for appellant in No. 74–1309.

Alan Edgar Harris, Baltimore, Md. [court-appointed counsel], for appellant in No. 74–1310.

Philip D. Quint, Baltimore, Md., on brief for appellant in No. 74–1311.

Jeffrey S. White, Asst. U. S. Atty. (George Beall, U. S. Atty. and Joshua R. Treem, Asst. U. S. Atty., on brief), for appellee in Nos. 74–1308, 74–1309, 74–1310 and 74–1311.

Before BRYAN, Senior Circuit Judge, and FIELD and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

Appellants were charged in a three count indictment with: (1) taking money from a federally insured bank by intimidation in violation of 18 U.S.C. § 2113(a); (2) bank larceny in violation of 18 U.S.C. § 2113(b); and (3) assault during a bank robbery in violation of 18 U.S.C. § 2113(d). They were also charged in each count as aiders and abettors.

A jury found them guilty of each of the three counts, and each was sentenced to concurrent sentences for each count.

■ Among the issues raised on appeal are: (1) Was Matthews prejudiced by the trial court's denial of his request to testify outside the presence of the jury as to the voluntariness of a statement made by him to the FBI? (2) Was Owens prejudiced by a photographic display shown by the FBI to a witness? and (3) Was Allen prejudiced by the trial court's denial of his request for a sub-

poena of a witness under FRCrP 17(b)? The only issues raised by Hamilton concern the enlargement of admittedly genuine photographs and the sufficiency of the evidence. We find the arguments as to these and other issues raised to be without merit and accordingly affirm.

The convictions involved stem from the August 28, 1973 robbery of the First National Bank of Southern Maryland located in Deale, Maryland. During the course of the robbery, which was committed by four masked males, one of the bank's tellers was struck in the head with a wooden baton, another bank employee was struck in the head, and a customer of the bank was kicked in the ribs. The last two assaults occurred while the victims were lying face down on the floor.

The robbers were unable to start their stolen getaway car and fled on foot. As they ran, they passed by the window of a beauty shop owned by Mrs. Camille Wood as Mrs. Wood watched. They then entered a wooded area.

Approximately 25 minutes after the robbery, Matthews and Owens were spotted by a Maryland State Trooper close to the wooded area near the bank. The trooper testified at trial that they were sweating profusely when he picked them up and were covered with pollen and briars. They had no identification on them.

Another State Trooper apprehended Allen and Hamilton in two vehicles near the bank. He testified at trial that when Allen and Hamilton were stopped they were sweaty and had twigs and burrs in their head and on their clothes. A subsequent search of the vehicle driven by Allen produced coin packets with the name of the First National Bank of Southern Maryland printed thereon. A few days after the robbery, the FBI discovered, near the place where the vehicles operated by Allen and Hamilton had been parked, another roll of coins.

The government also produced a witness who identified Hamilton and Matthews as the persons who stole the Mustang used by the robbers. Appellants fit the physical description given by the bank employees of the robbers. Matthews and Owens were identified in court by Mrs. Camille Wood, who stated that she saw them run by her beauty shop shortly after the robbery occurred. There was evidence that the appellants were familiar with each other. Allen's palmprint was found on the door of the bank. And there was evidence showing that hair samples of Hamilton were identical to hair found in a mask discarded by one of the robbers and that hair samples of Owens were similar to hair found in a mask used by another of the robbers.

I

Matthews contends that he was prejudiced by the trial court's denial of his request to testify outside the presence of the jury as to the voluntariness of a statement made by him to the FBI.

Following the capture of Matthews, FBI Agents Moore and Mulholland interviewed him. Agent Moore testified that Matthews denied any participation in the bank robbery. Matthews told the agents that he was in the vicinity of the robbery because he and Owens had come there to visit some girls. He further stated that he had taken a shortcut through the woods that morning. Matthews admitted that he knew the other defendants and that all four persons knew each other, which statement contradicts a denial by Allen that he knew any of the others.

Matthews made no pre-trial motion to suppress the statement made to the agents. Prior to the introduction of the statement, Agent Moore testified as to the circumstances surrounding the statement and the voluntariness with which it was made. His testimony was that the interview lasted approximately 30 minutes and that Matthews was furnished a statement of his constitutional rights, which he read. Matthews indicated to Moore that he could read and that he understood his constitutional rights. Matthews signed a waiver of his rights. Agent Moore testified that no promises

or threats were made to Matthews and that Matthews never indicated he desired to have an attorney present or that he wished to discontinue the questioning.

The trial court made a finding on the record that the statement by Matthews was freely and voluntarily furnished to the agents.

Agent Mulholland was called by the defense, and he corroborated Moore's testimony. Mulholland also stated that Matthews was neither accused of the robbery nor cajoled during the course of the questioning.

Matthews later testified himself. He stated that he had been advised of his constitutional rights by the agents, that he had signed the waiver of rights form, and that he had agreed to answer questions.

Matthews now asserts that the trial court committed reversible error in denying his request for an opportunity to testify out of the presence of the jury as to the voluntariness of the statement. We do not agree.

In *United States v. Inman,* 352 F.2d 954 (4th Cir. 1965), we held that on the proffer of a confession, even if no objection is made, the court should let the jury withdraw and then take evidence on the confession and its factual setting. The defendant may testify at that time as to the confession, without prejudice to his privilege not to take the stand before the jury. The defendant may be examined and cross-examined only with regard to the origin and character of the confession and not upon his innocence or guilt. The trial judge then determines whether the statement is admissible. See *United States v. Johnson,* 495 F.2d 378 (4th Cir. 1974), which revises *Inman* as to the burden of proof to be applied by the trial judge, but not as to the procedure to be followed.

In *United States v. Russo,* 399 F.2d 75 (4th Cir. 1968), this court rejected any attempt to distinguish between inculpatory and exculpatory statements when determining admissibility. We there observed that regardless of whether the statement was intended to be inculpatory or exculpatory when made, the statement was proffered by the government for the sole purpose of establishing guilt.

■ However risky the procedure followed by the trial court here may have been, for it could not be foreseen that Matthews would testify, any error that may have resulted from the refusal to allow Matthews to testify out of the presence of the jury as to the voluntariness of his statement was harmless. This same question was decided in *United States v. Russo.* As in *Russo,* the omission here was rendered harmless when Matthews took the stand and gave a version paralleling that given by Agent Moore. Matthews did not testify as to any facts that suggest the statement made by him was other than freely and voluntarily made.

We do not ground our rejection of Matthews' argument on his failure to make a pre-trial motion to suppress the statement. Cf. FRCrP 12, 41(b)(3).

## II

Owens asserts that he was prejudiced by a photographic display shown to Mrs. Camille Wood. He argues that the photographic display was so impermissibly suggestive as to give rise to irreparable misidentification.

FBI agent Robert Lanphear testified as to the display of photographs to Mrs. Wood. He testified he went to Mrs. Wood's beauty shop on September 4, 1973 to show her photographs in order to determine if she could identify the men who ran by her shop after the robbery. The photographs were in four groups with either six or seven photographs to a group. Each photograph had no suggestive markings or identification visible to her. There was nothing impermissibly suggestive about the pictures themselves or their arrangement.

Agent Lanphear told Mrs. Wood before he showed her the first group of photographs that he was going to show her photographs of individuals, some of whom might have been involved in the

bank robbery. No other remarks or gestures were made. Mrs. Wood picked out the photograph of Owens and said that she believed he was probably one of the individuals involved in the robbery.

██ We find no indication of anything impermissibly suggestive about the photographic display itself or the circumstances surrounding its presentation to Mrs. Wood.

██ Owens alleges that the instruction by Agent Lanphear to Mrs. Wood about the identification process should have been repeated before each group of photographs and not just before the first group. This assertion is frivolous.

Even were the photographic display found to be suggestive, there was a sufficient independent basis for Mrs. Wood's in-court identification of Owens and Matthews to render those identifications admissible. *United States v. Cranson*, 453 F.2d 123 (4th Cir. 1971); *Vance v. North Carolina*, 432 F.2d 984 (4th Cir. 1970). A claim that an in-court identification was tainted by a pre-trial photographic identification "must be evaluated in light of the totality of surrounding circumstances." *United States v. Marson*, 408 F.2d 644 (4th Cir. 1968).

Mrs. Wood testified that she recognized both Owens and Matthews because she had seen them run by her window and not because she had earlier seen photographs of them. Her account of her encounter with the robbers was that she heard a commotion from the bank, locked her door, and then stood next to the window of her shop. As she stood there, four men ran by her shop from the bank. She testified that she saw them for a period of approximately ten seconds at a distance of ten feet or less. The men were not wearing masks at this point. As they passed her shop, she stated, the men slowed down and one turned to another of the robbers and said, "Let's get out of here!" She remained unshaken in her account of these events throughout cross-examination.

Reviewing the totality of the circumstances, we find the in-court identifica-tion to be without taint and that it was properly admitted into evidence.

██ We also reject Owens' assertion that he had a right to have an attorney present during the photographic display. This issue has been foreclosed by the Supreme Court in *United States v. Ash*, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973).

## III

Allen asserts that the trial court committed prejudicial error in denying his request for a subpoena of Mrs. Wood to testify for the defense. Allen argues that the denial of the subpoena prevented him from presenting a complete defense.

██ Allen's request for a subpoena of Mrs. Wood was only made orally at trial six calendar days after Mrs. Wood had testified for the government. At that time, Allen's counsel made a request for eight subpoenas, including the one for Mrs. Wood, and all requests were granted except that for Mrs. Wood.

In requesting the Wood subpoena, Allen's attorney stated that he wanted to find out who she first reported the robbery to, whether the police knew she was an eyewitness "and so forth." He also indicated that he wanted to show where she was standing when she saw the men running by her shop. He now says he wanted her because of a conversation she had just following the robbery in front of one Norman Goldberg, a photographer who had accompanied a newspaper reporter to the scene of the crime. The trial court was never advised that Allen sought to show the conversation in front of Goldberg.

The trial court, in denying Allen's request, noted that the position of Mrs. Wood at the time she sighted the fleeing robbers had been covered already. The court also observed that the defendants had had an opportunity to cross-examine Mrs. Wood following her testimony on direct examination. She had been extensively cross-examined, including questioning by Allen's attorney. No request

had been made to have Mrs. Wood remain subject to recall following the conclusion of her earlier testimony.

The trial court did not believe that Allen had a legitimate need for a subpoena of Mrs. Wood. FRCrP 17(b) provides that the trial court shall order that a subpoena be issued for a named witness on application of an indigent defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense.

Reviewing Allen's request in the setting in which it was made, the trial court did not abuse its discretion in denying the request. *United States v. Becker,* 444 F.2d 510 (4th Cir. 1971); *United States v. Baxter,* 492 F.2d 150, 196 (9th Cir. 1973); *United States v. Conder,* 423 F.2d 904 (6th Cir. 1970); and *Findley v. United States,* 380 F.2d 752 (10th Cir. 1967). Allen offered little, if any, indication of what specific testimony he wished to elicit from Mrs. Wood or what part her further testimony would have in his defense. If he wished to set Mrs. Wood up for impeachment, he had previously had the opportunity and declined it. The trial court acted within its discretion in denying his request in these circumstances. See *United States v. Kaufman,* 393 F.2d 172 (7th Cir. 1968).

In all events, when Goldberg was called as a witness for the defense, he was allowed to testify as to what Mrs. Wood had said to the reporter, so any failure of the trial court to issue the subpoena on this account, if error, was harmless.

## IV

Since the trial court indicated at the time of sentencing that motions to set aside two of the three sentences should be made if the convictions were affirmed, it is not appropriate for us to require compliance with *United States v. Shelton,* 465 F.2d 361 (4th Cir. 1972).

## V

We have reviewed the other assignments of error made by the appellants and find them to be without merit. Accordingly, the judgments of conviction are affirmed and the case remanded only for motions concerning vacation of sentences as previously mentioned by the district court.

*Affirmed and remanded.*