**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joe RENTERIA, Defendant-Appellant.**

No. 79–5325.

United States Court of Appeals,
Fifth Circuit.

Sept. 18, 1980.

Charles L. Roberts, El Paso, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before BROWN, GEWIN and POLITZ, Circuit Judges.

POLITZ, Circuit Judge.

Joe Renteria was convicted by a jury of conspiracy to import cocaine, in violation of 21 U.S.C. §§ 952(a) and 960(a)(1); conspiracy to import marijuana, in violation of 21 U.S.C. §§ 952(a) and 960(a)(1); conspiracy to possess cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1); and conspiracy to possess marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). On appeal Renteria challenges: (1) the allowance of evidence of an extrinsic offense to demonstrate intent; (2) the failure of the trial judge to rule on a motion to suppress; (3) the failure of the trial judge to conduct a *Jackson v. Denno* hearing on voluntariness of his confession; and (4) the permitting of the jury to hear portions of a tape recording which had not been played in open court and received in evidence. Finding merit in three of the challenges, we remand for appropriate hearings.

Renteria and five others were indicted on May 18, 1978, on four conspiracy counts.[1] Renteria was not taken into custody until September 30, 1978, at which time he was arrested for a traffic violation in Palm Springs, California.

---

1. Renteria was also indicted on a charge of aiding and abetting the possession of unregis-tered firearms in violation of 18 U.S.C. § 2 and 26 U.S.C. § 5861(d). He was acquitted.

His arrest was followed by a consensual search of his motel room. Two ounces of cocaine were found. After being given *Miranda*[2] warnings Renteria confessed to the charges. A question is raised whether he was improperly pressured into confessing.

#### Extrinsic Offense

Renteria testified at the trial. On direct examination he admitted using cocaine on a moderate scale but denied the conspiracy involving five pounds because defendants did not have the capability to finance that size transaction. The government introduced evidence about the two ounces found in Renteria's motel room and that this was a commercial quantity. Renteria acknowledged on cross-examination that cocaine was found in the search but insisted he knew nothing about it. The cocaine taken from the motel room was not a part of the cocaine referred to in the indictment.

Renteria pleaded entrapment on the marijuana counts and, in effect, pleaded factual impossibility on the cocaine counts.

Renteria contends that the admission of evidence about the seized cocaine was contrary to Fed.R.Evid. 404(b) and the Fourth Amendment exclusionary rule. Rule 404(b) provides:

> (b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In support of admissibility of the evidence, the government relies on our en banc decision in *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). *Beechum* enunciates a two-part test to determine admissibility of extrinsic offense evidence: "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defend-

ant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403." 582 F.2d at 911. Relevance in the extrinsic offense arena is a function of similarity which "means more than that the extrinsic and charged offense have a common characteristic. For the purposes of determining relevancy, 'a fact is similar to another only when the common characteristic is the significant one for the purpose of the inquiry at hand' . . . . Therefore, similarity, and hence relevancy, is determined by the inquiry or issue to which the extrinsic offense is addressed." 582 F.2d at 911.

Finally, pertinent to our present inquiry, we stated in *Beechum*: "Where the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses." *Id.* at 911.

■ Applying the *Beechum* test we conclude that the evidence of the extrinsic offense was properly admitted.

■ The extrinsic offense was the possession of a commercial quantity of cocaine. The charged offenses were conspiracy to import cocaine, conspiracy to distribute cocaine, conspiracy to import marijuana, and conspiracy to distribute marijuana. It is not necessary that the extrinsic offense involve conspiracy when the charged offense is conspiracy. *United States v. McMahon*, 592 F.2d 871 (5th Cir. 1979), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 289. It is sufficient if the extrinsic offense is similar to the substantive offense at the core of the conspiracy. Possession of a commercially saleable amount of cocaine is relevant evidence of an intent to deal in illicit drugs. The similarity with the intent required for proof of importation or distribution as charged cannot be gainsaid.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The second part of the *Beechum* test is whether prejudice outweighs probative value. Renteria conceded intent by arguing entrapment and impossibility. May the government nonetheless introduce evidence of the seized cocaine to show intent? In *United States v. Roberts*, 619 F.2d 379 (5th Cir. 1980), we held that in a conspiracy case, the government may introduce extrinsic offense evidence during its case in chief to prove intent, reasoning that, although in the end the defense might choose not to contest the issue of intent, the government has no way of knowing that when it presents its case in chief. Such proof would have to be offered during the case in chief because if the defendant offered no evidence there would be no opportunity to offer evidence in rebuttal. This case is similar. Although in the end Renteria conceded intent on the marijuana counts by arguing entrapment, and effectively conceded intent on the cocaine counts by arguing impossibility, the government could not know that with certainty when it presented its case in chief. We conclude that the evidence of the extrinsic offense has obvious probative value that is not outweighed by the danger of undue prejudice and that such evidence meets the other requirements of Fed.R.Evid. 403. Unless barred by the Fourth Amendment challenge, this evidence was properly admitted.

### Ruling on Motions to Suppress

■ Prior to trial Renteria moved to suppress evidence of the cocaine found on his person at the time of his arrest and during the search of his motel room after his arrest. Fed.R.Crim.P. 41(f). The trial judge did not rule on this motion before trial, nor did he specifically defer a ruling until or after trial. Fed.R.Crim.P. 12(e) requires that he do one or the other. At trial Renteria orally moved to suppress his confession.

Again there was no ruling. The government argues that even if the cocaine was illegally seized it would still be admissible for purposes of impeaching Renteria, therefore the failure by the trial judge to rule on the motions is not reversible error. Even if evidence of the cocaine was admissible for impeachment under *United States v. Havens*, —— U.S. ——, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980), a question that we do not now reach, there remains the inquiry whether Renteria's confession is "poisoned fruit" because of the claimed constitutional violation. These issues must first be addressed by the district court and therefore a remand is mandated.[3]

### Jackson v. Denno

The trial court did not consider whether Renteria's confession was voluntary. His counsel did not raise the issue. On appeal Renteria contends that his testimony raised the issue and that the district court erred in failing to provoke the determination *sua sponte*.[4]

Renteria testified that after his arrest, DEA Agent Moren told him that he could remain in prison for the rest of his life, but that the government would go easier on him if he talked. Renteria refused to talk. Agent Moren returned the next day and told Renteria that his mother was on her deathbed, that Renteria had ruined her life, and that if Renteria did not confess, his mother would be arrested for harboring him as a fugitive. The government disputes this version.

■ In *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964),[5] the Supreme Court held that when there is a factual issue about the voluntariness of a confession, the trial court must make a determination of voluntariness, including the

---

3. On remand the district judge should carefully consider conducting a new hearing on the motions to suppress rather than merely reviewing the record of the hearing before the now tragically deceased Judge John Wood.

4. Renteria claims the court was aware that voluntariness was an issue. In fact, the only

objection made was that the confession was the fruit of an illegal arrest. The district judge mentioned *Miranda* only in reflecting his assumption that the confession was valid.

5. The rule of *Jackson v. Denno* is codified at 18 U.S.C. § 3501(a).

resolution of any relevant disputed facts. Ordinarily, if the issue is not raised by the defendant it is waived. *Compare Black v. Beto*, 382 F.2d 758 (5th Cir. 1967) (issue raised) *with United States v. Gonzalez*, 548 F.2d 1185 (5th Cir. 1977) (issue not raised).

The trial court, however, must raise the issue on its own motion when the evidence clearly reflects a question of voluntariness. *United States v. Gonzalez*, 548 F.2d at 1190 (dictum); *United States v. Powe*, 591 F.2d 833 (D.C.Cir.1978). Involuntary confessions, about which the court is alerted, should not be admitted in evidence merely because of defense counsel's oversight or incompetence. Renteria's testimony pointedly raised the issue of voluntariness. It was plain error, Fed.R.Crim.P. 52(b), to fail to hold a *Jackson v. Denno* hearing. We remand for a hearing on the issue of voluntariness. If the trial court finds that the confession was voluntary, the error was harmless. *United States v. Hathorn*, 451 F.2d 1337 (5th Cir. 1971).

### The Tapes

The prosecution offered and played recordings of three conversations during the trial. The jury asked to hear the tapes during its deliberations, and the court obliged. Unfortunately, the jury was given two master tapes which contained conversations that had not been played in court. The jury listened to part of the previously unplayed conversations. Renteria contended that this created a possibility of prejudice and asked for a mistrial; the court refused, and instead instructed the jury not to consider the portions of the tapes that had not been played in court.

The first question is whether the entire master tapes were admitted into evidence or whether only the three conversations were. When the government tried to introduce the tapes, Renteria's counsel objected

because they had not been made available to him.[6] The government, however, contended that Renteria's counsel had previously heard the tapes. The colloquies, read in context, were directed to whether the conversations should be admitted, not whether the master tapes, in their entirety, should be admitted.

When the tapes were introduced, the government did not say that it was offering all of the master tapes. The government argues, however, that Renteria's counsel was on notice that the entire tapes were being offered. In support of this the government notes that at trial, after playing one conversation, the operator advanced the tape over unplayed material to play the next conversation to the jury. Further, the government notes that the court found the whole tapes had been made available to Renteria's counsel several months earlier in connection with another trial. Therefore, the government argues, when Renteria's counsel failed to object the entire tapes appropriately came into evidence.

We disagree. Even if Renteria's counsel had the opportunity to listen to the entire tapes, he was not on notice that the master tapes in their entirety were being admitted. The government played only three conversations at trial. The defense was justified in assuming that these, and not other conversations which conceivably range from irrelevant to prejudicial, were the only conversations in evidence. When the government offers into evidence a taped conversation that is part of a master tape, only the conversation played in court will be admitted,[7] unless the government makes clear that it is offering the entire master tape. In the latter instance the defendant will have an opportunity to examine the entire tape and make known any objections and the court will have an opportunity to determine admissibility *vel non*.

---

**6.** Although Renteria's counsel did not make this clear, if the tapes had not been made available to him, they would presumably have been inadmissible under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**7.** If the government introduces only part of a conversation into evidence, whether the rest is admitted is governed by Fed.R.Evid. 106 and general principles of evidentiary law. *See generally* Weinstein and Berger, 1 *Weinstein's Evidence* ¶ 106[01] *et seq.* (1979); 7 *Wigmore on Evidence* §§ 2094–2125 (Chadborn rev. 1978).

Having decided that the tapes not played at trial were not in evidence, the next question is the appropriate remedy. When jurors consider material not introduced into evidence, the conviction must be reversed unless it is clear that the material was not prejudicial. *Farese v. United States*, 428 F.2d 178 (5th Cir. 1970). In this case, we do not know what material the jurors heard. We only know that they heard "a portion of the conversation of a tape that was not played in Court." Therefore we remand in order that the trial court may determine whether the jurors heard prejudicial material. The government argues that this is impermissible, citing *Llewellyn v. Stynchcombe*, 609 F.2d 194 (5th Cir. 1980). The government's reliance is misplaced. *Llewellyn* permits the court to make an inquiry into what extraneous material the jury may have heard. It proscribes any evaluation whether the jury was in fact influenced by the extraneous material. If the trial judge finds that the jury had before it prejudicial material, the inquiry is complete and the conviction must be reversed. If the trial judge determines the material was not prejudicial then the error is harmless and the convictions stand.

## Assistance of Counsel

Finally, Renteria contends that he was denied the effective assistance of counsel. Our review of the record convinces us that there is no merit to this contention. Renteria received a constitutionally adequate level of representation.

## Conclusion

We remand in order that the district court may:

(1) consider and rule on the issues raised in both the oral and written motions to suppress;

(2) conduct a hearing on the voluntariness of Renteria's confession; and

(3) determine whether any extraneous prejudicial material was considered by the jury.

Should Renteria prevail in any of these three inquiries, the convictions must be reversed and a new trial ordered.[8] If the government's position is maintained in all three instances the convictions should not be disturbed.

In the interest of judicial and other economies we consider it appropriate to follow the procedure utilized in *United States v. Rivero*, 532 F.2d 450, 461 n. 23 (5th Cir. 1976), and our disposition after remand, 554 F.2d 213 (5th Cir. 1977), and in *United States v. Preston*, 608 F.2d 626, 640 n. 19 (5th Cir. 1979). We declare as the law of this case that an appeal will lie to this court on any decision by the district court on remand which is adverse to Renteria. Such appeal shall be handled, without the necessity for a new appeal, on the basis of the record now before us together with the record of the remand hearing and the district court's supplemental findings of fact and conclusions of law which shall be certified to this court and referred for further disposition to this panel. In the event of such an appeal, the clerk of this court will set a reasonable schedule for the filing of supplemental briefs without further order of the court.

The matter is REMANDED for further proceedings consistent herewith.

---

**8.** There is one possible situation where Renteria would prevail on the Fourth Amendment challenge but a new trial would not be required. It is not clear from Renteria's written motion to suppress the cocaine, and his subsequent oral motion to suppress the confession, whether there is a plausible basis to suppress the cocaine but sustain the confession. Should the court find for the government on the voluntariness and extraneous material issues, and find a constitutional violation only as to the cocaine and not as to the confession, a reversal and new trial would not be necessary if it is determined that evidence of the cocaine may be used for impeachment under *Havens, supra*.