**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Anthony BENTLEY,
Defendant-Appellant.**

No. 81–3263.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 29, 1982.

Decided Jan. 31, 1984.

David E. Melcher, argued, Cynthiana, Ky., for defendant-appellant.

Cheryl D. Grant, John DiPuccio, argued, Asst. U.S. Attys., Cincinnati, Ohio, for plaintiff-appellee.

* The Honorable Thomas E. Fairchild, Senior Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

Before MARTIN and WELLFORD, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.*

FAIRCHILD, Senior Circuit Judge.

Defendant Bentley was convicted of two counts of bank robbery. He appealed. In response to trial counsel's motion, this court appointed a different attorney to represent Bentley on appeal and instructed that "appellant's brief [include] a discussion addressing [1] whether the defendant's oral confession was properly admitted when it was apparently given in the absence of counsel after the defendant had already exercised his right to have counsel present; [2] whether any objection to the admission of the oral confession was waived by the defense counsel's failure to object to [its] admission . . .; and [3] whether the defendant received ineffective assistance of counsel particularly as his assistance related to the taking and admission of defendant's oral confession."

## I.

The only evidence of the circumstances surrounding defendant's oral confession is the trial testimony of FBI Special Agent Williams. Agent Williams described a series of conversations he had with Bentley at the Hamilton County Jail in Cincinnati where Bentley was being held on a state bank robbery charge.

Prior to the first of these interviews, Williams testified he contacted Bentley's state court attorney—later his federal court trial attorney—Mr. Osborne, explained that he wanted to talk to Bentley about "his involvement in several bank robberies," and arranged a time when they could both meet with Bentley. On March 31, 1980, Williams and Osborne sat down with the defendant at the jail. Agent Williams advised Bentley of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Bentley signed a waiver of rights form. Williams then informed Bent-

ley of the robberies he was suspected of committing. After conferring privately with his attorney, Bentley stated that he "did not have anything to say." The interview ended.

The following day Williams called Osborne and informed him that he intended to interview Bentley again on the second of April at ten o'clock. Osborne stated that "if it was possible he would try to be there." Williams arrived at the county jail on time, Osborne did not, and the interview proceeded. Williams again advised Bentley of his *Miranda* rights and obtained a signed waiver. The record does not disclose what, if anything, was said about Osborne's absence. Williams asked Bentley if "he was ready to tell me the story regarding the robberies that I suspected him of committing." After indicating hesitancy to testify against his partner, Bentley confessed that he participated in both robberies.

The next day, April 3, 1980, Williams returned to the jail—again after notifying Osborne of his intent to interview Bentley—advised the defendant of his *Miranda* rights, and obtained a signed waiver. Williams explained that he was "interested in getting a signed confession." Bentley agreed to sign a statement confessing involvement in the two robberies. Williams then began to write a statement for Bentley to sign. As Williams was finishing, Osborne arrived and said he wanted to talk to his client. A private conversation between Osborne and Bentley followed, after which the defendant stated "that he did not wish to sign that statement nor did he wish to testify against his partner."

The defense made no pretrial motion to suppress Agent Williams' testimony concerning Bentley's oral confession, nor did Osborne object to Williams' testimony at trial. The only question as to the admission of the agent's testimony was raised by the trial court *sua sponte.*

Declaring a recess in the middle of Williams' testimony, Judge Spiegel called counsel into chambers and expressed doubt as to the authority of an agent "to go back and continue seeking to question the defendant after the defendant has indicated he doesn't want to be questioned." In response, government counsel argued that Agent Williams acted properly, stressing that before each session he notified defendant's attorney of his intent to interview Bentley and obtained a signed waiver of rights from Bentley before proceeding with questioning. Counsel also emphasized the distinction between the present case where Bentley had benefit of counsel at an earlier interrogation and the case where a defendant requests an attorney at the first interrogation but is not given one. Judge Spiegel asked Bentley's counsel if he had "anything to offer." Osborne then conferred with Bentley and responded "that what's been told to the Court is accurate."

## II.

At issue are three interviews, the third being divided into two phases. At the first interview counsel was present at the instance of the Agent. Bentley consulted with counsel and chose to remain silent. At the second interview counsel was absent, although he had been notified of the proposed interview. Bentley signed a waiver of his *Miranda* rights and then made incriminating statements. At the first phase of the third interview Bentley (with counsel absent) again signed a waiver and agreed to sign a confession. After counsel arrived and conferred, Bentley refused to sign.

There is no indication that Bentley initiated the second interview and Bentley argues that the so-called *"Edwards* rule" therefore establishes that the Agent's testimony as to his oral confession at the second interview was inadmissible. *See Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

We do not agree that the *"Edwards* rule" applies to the facts before us.

In *Edwards,* police stopped questioning the accused after he asked for an attorney but returned the following day and told Edwards "he had" to talk. Police then read Edwards his rights and he agreed to make a statement. The Supreme Court found that

Edwards' confession was taken in violation of his right to counsel under the Fifth and Fourteenth Amendments. The Court held that:

> when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that *an accused* such as Edwards, *having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police.*

*Edwards,* 451 U.S. at 484–85, 101 S.Ct. at 1884–1885 (emphasis added). This latter holding—italicized—has come to be known as the *"Edwards* rule." *Oregon v. Bradshaw,* —— U.S. ——, ——, 103 S.Ct. 2830, 2834, 77 L.Ed.2d 405 (1983). *See also Wyrick v. Fields,* 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982). *Cf. Maglio v. Jago,* 580 F.2d 202, 205 (6th Cir.1978).

Given the *Edwards* facts—an initial request for counsel followed, before provision of counsel, by an interview somewhat insistently initiated by the police—the Supreme Court decided that the prosecution would not be permitted to support admissibility by demonstrating knowing and intelligent waiver of the right to counsel and right to remain silent unless it first proved that the accused had himself initiated further communication.

**1.** Past precedent in this Circuit at least suggests that Williams was not required in the first instance to notify Bentley's state court attorney of his intent to ask the defendant questions about possible involvement in federal crimes. *See United States v. Reynolds,* 496 F.2d 158 (6th Cir.1974); *United States v. Dority,* 487 F.2d 846 (6th Cir.1973).

**2.** The question whether *Edwards* should apply retroactively under the principles enunciated in *United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), is presently under study in this Circuit. *Rose v. Engle,* 722

The Court has characterized the *Edwards* rule as "a prophylactic rule, designed to protect an accused in police custody from being badgered by police officers in the manner in which the defendant in *Edwards* was." *Bradshaw,* —— U.S. at ——, 103 S.Ct. at 2834.

The manner in which Agent Williams conducted himself was markedly different. He arranged for counsel's presence at the first interview.[1] He notified counsel of his intention to hold the second and third interviews, receiving a vague response concerning counsel's intentions to be present. Although the record does not show what the agent and Bentley said about counsel's absence, there is nothing to indicate that the agent made any misleading statements.

We view the impact of *Edwards* (as explained in *Bradshaw*) on this case as no more than emphasizing the need that Bentley be shown to have made a knowing and intelligent waiver before his responses become admissible.[2]

The present record does not permit a determination of the knowing and intelligent nature of Bentley's waiver. Bentley's signed waivers were in evidence and Agent Williams testified to having advised Bentley of his rights. Williams did not testify what either he or Bentley said about Mr. Osborne's absence, or whether Bentley indicated any preference to have him present. No testimony was offered as to Bentley's education or experience. The record does, however, show that on the two occasions when Bentley had the benefit of consultation with counsel, he decided to remain silent. The inference readily drawn from

F.2d 1277 (1983). The Supreme Court has this issue before it. *See Stumes v. Solem,* 671 F.2d 1150 (8th Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 3568, 77 L.Ed.2d 1409 (1983). We do not wait for direction from these cases because (1) we find the *Edwards* rule is otherwise not applicable to this case and (2) the question of retroactivity would not appear raised, assuming the *Johnson* standard may be used in a Fifth Amendment case, where, as here, the case was not yet final at the time *Edwards* was decided. *See Johnson,* 102 S.Ct. at 2594.

the counseled choices to remain silent makes it disquieting to rely solely on the signed waivers.

 The government bears a "heavy burden of establishing that Bentley voluntarily, knowingly and intelligently waived his right to silence and to counsel." *Miranda,* 384 U.S. at 475, 86 S.Ct. at 1628 (citing *Escobedo v. Illinois,* 378 U.S. 478, 490 & n. 14, 84 S.Ct. 1758, 1765 & n. 14, 12 L.Ed.2d 977 (1964)). *See also Tague v. Louisiana,* 444 U.S. 469, 470–71, 100 S.Ct. 652, 653, 62 L.Ed.2d 622 (1980); *North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979). Where the accused has "expressed his own view that he is not competent to deal with the authorities without legal advice, a later decision at the authorities' insistence to make a statement without counsel's presence may properly be viewed with skepticism." *Michigan v. Mosley,* 423 U.S. 96, 110 n. 2, 96 S.Ct. 321, 329 n. 2, 46 L.Ed.2d 313 (1975) (White, J., concurring).

 The government asserts that "[i]t is obvious . . . that [Bentley's] confession was an intelligent choice of his own free will." It is emphasized that Bentley had the benefit of counsel during state court proceedings and during the first of his interviews with Agent Williams, and that Bentley signed a waiver of rights form at each of his three interviews. Neither of these facts requires the finding of a valid waiver, however. As to the signed waivers, the Supreme Court stated in *North Carolina v. Butler:*

> An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case.

441 U.S. at 373, 99 S.Ct. at 1757. We cannot say in light of the other doubts raised in this case that Bentley's signature

of a waiver form is determinative. We decline also to find the defendant's past representation by counsel indicative of the intelligent nature of his waiver of the right to counsel and to silence at subsequent interviews. Indeed, as already indicated, his decisions to remain silent when counsel was present would support the opposite conclusion.

On the record before us we are unable to determine that Bentley voluntarily, knowingly and intelligently waived his right to have counsel present during questioning and to remain silent.

### III.

The government contends that even if the present record does not demonstrate a knowing and intelligent waiver of the right to counsel and to silence, the defendant waived any defect by failing to object at trial. Bentley contends that the district court erred in not making a further inquiry *sua sponte,* and that his attorney's failure to object amounted to ineffective assistance of counsel.

 In *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), the Supreme Court recognized that a criminal defendant has a constitutional right to a fair hearing and a reliable determination of the voluntariness of a confession. *See* 18 U.S.C. § 3501 (1976). Failure to raise a contemporaneous objection to admission of a confession, however, ordinarily results in waiver of the right to a voluntariness inquiry. *Wainwright v. Sykes,* 433 U.S. 72, 86, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977); *United States v. Renteria,* 625 F.2d 1279, 1283 (5th Cir.1980). The trial court may be found to have a duty to raise the issue of voluntariness on its own only when the evidence "clearly reflects a question" about the voluntary nature of a confession. *See Renteria,* 625 F.2d at 1283. *See also United States v. Powe,* 591 F.2d 833, 842–43 (D.C.Cir.1978) (certain "alerting circumstances" may impose duty to investigate voluntariness of confession).[3] Although

**3.** An exception to this general rule can be found in the Fourth Circuit where a trial court

this duty typically has been found where evidence indicated a confession may have been given under circumstances amounting to overt coercion, we think the same rule should apply where, as here, serious doubts are raised as to defendant's knowing and intelligent relinquishment of his *Miranda* rights.

Even in the absence of a defense objection, the questions raised by defendant's refusal to waive when he had the benefit of counsel should have alerted the court to the need to inquire further into the circumstances. Counsel's inexplicable failure to object should have emphasized that need.[4] *See United States v. Powe,* 591 F.2d at 845. *See also United States v. Renteria,* 625 F.2d at 1283; *United States v. Barnes,* 610 F.2d 888, 892–95 (D.C.Cir.1979).

The disquieting facts surrounding the alleged waiver resulted in the district court ultimately raising the issue of the admissibility of Bentley's confession on its own. In chambers the court pressed the government for a discussion of the propriety of Agent William's conduct. The court also asked defense counsel if he had anything to offer. Defense counsel's response, that he agreed with everything the prosecution had said, at least suggests a lack of preparation on the issue of admitting defendant's confession.

 When no other argument was forthcoming the court admitted the testimony. The court did not examine the underlying question: whether the defendant knowingly and intelligently waived his *Miranda* rights. The great importance to the de-

fendant of keeping the confession out of the record if not properly present was obvious. Accordingly, we deem it plain error for the court not to have inquired further into the issue of defendant's waiver. *See* Fed.R. Crim.P. 52(b). *Cf. Clark v. Jago,* 676 F.2d 1099, 1110–13 (6th Cir.1982) (remanding case for suppression hearing where trial court failed to engage in sufficient factfinding or inquire whether waiver was knowing or intelligent in determining sufficiency of defendant's waiver of the right to counsel during custodial interrogation).

### IV.

The government also argues that if the admission of Bentley's confession was error, it was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Relying on the Supreme Court's decision in *Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972), this Circuit has held that "where a confession, otherwise voluntary, is inadmissible for failure to comply with the strict procedural requirements of *Miranda,* reversal is not required if, upon the facts, the court can find beyond a reasonable doubt that its use at trial was harmless and could not have affected the outcome." *United States v. Charlton,* 565 F.2d 86, 92 (6th Cir.1977), *cert. denied,* 434 U.S. 1070, 98 S.Ct. 1253, 55 L.Ed.2d 773 (1978).

 In the case of an improperly admitted confession independently establishing guilt, the focus must be on whether other evidence of the defendant's guilt was

---

has an obligation, even where no objection is raised, to take evidence outside the jury's presence on the voluntariness of any proffered confession. *See United States v. Inman,* 352 F.2d 954, 956 (4th Cir.1965). *See also United States v. Owens,* 528 F.2d 1176, 1179 (4th Cir.1975). *But see United States v. Yamashita,* 527 F.2d 954 (9th Cir.1975).

4. Nothing in the facts of this case suggest that defense counsel declined to object to the admission of defendant's confession as a matter of strategy. On the contrary, to the extent a defense strategy can be discerned, it would appear defense counsel hoped to show that the defendant was the victim of misidentification and of a felon who hoped to protect the actual guilty party by naming Bentley as his accom-

plice. The admission of Bentley's oral statements admitting culpability torpedoed that strategy.

It is possible, though not discernible on this record, that counsel failed to raise the issue of admissibility because Bentley privately conceded that he knowingly and intelligently waived his rights at the second interview. This might have been the substance of Bentley's private conversation with his attorney in chambers prior to the attorney's statement "that what's been told the Court is accurate." If this was the basis for counsel's decision not to object, then a waiver of the issue occurred and counsel was not at fault. As to this question, we leave it to the district judge to make such inquiries as are appropriate on remand.

"overwhelming." *Charlton,* 565 F.2d at 93. The other evidence presented by the government at trial does not meet this tough standard. Aside from Bentley's confession two pieces of testimony appear central. The first was the testimony of a loan officer at First Federal Savings who identified Bentley as the man who came to see about a car loan, returned two hours later and robbed the bank. "[E]yewitness identification by strangers based upon fleeting observations made in stressful circumstances are frequently inaccurate." *Eberhardt v. Bordenkircher,* 605 F.2d 275, 279 (6th Cir. 1979) (quoting *United States v. Barker,* 553 F.2d 1013, 1017 (6th Cir.1977)). While more credence might be given an eyewitness who observes a person during a nonstressful moment, the loan officer's testimony is subject to question because he admitted that he chose the picture of another man when asked to identify the bank robber. (The group of photographs did not include the defendant.) The other central piece of evidence was the testimony of Bentley's alleged accomplice Zachary Kitchens. A jury could, however, entertain reasonable doubts about the testimony of an alleged accomplice who is testifying against the defendant in keeping with a plea agreement. *Cf. United States v. Brown,* 699 F.2d 585, 590 (2d Cir.1983) ("jury could have reasonable doubts about ... [testimony of] a co-defendant with prior convictions and a history of drug addiction"). The other evidence presented to the jury was circumstantial in nature. Missing from the government's case, though not determinative, is the kind of physical evidence establishing defendant's guilt that has persuaded this court in the past that the admission of an illegally obtained confession was harmless. *See, e.g., Young v. Rees,* 707 F.2d 935 (6th Cir. 1983) (ballistic tests established gun seized from defendant's house matched shell casing found at murder scene); *Charlton,* 565 F.2d at 93 (defendant's fingerprints found on counterfeiting equipment seized in premises controlled by defendant). Taken as a whole, the other evidence offered at trial cannot be said to be so overwhelming as to make admission of Bentley's confession harmless beyond a reasonable doubt.

The error here was failure to make a sufficient inquiry to determine whether defendant made a knowing and intelligent waiver of his right to counsel and right to silence. We remand for such inquiry. If the district court finds there was an adequate waiver, the judgment will stand affirmed. If the contrary be found, the judgment must be set aside and a new trial ordered.

WELLFORD, Circuit Judge, concurring and dissenting:

I agree with Judge Fairchild's opinion in its dealing with the non-applicability of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), under the facts of this case. I would, however, find that Bentley made a knowing and intelligent waiver of his right to have counsel present under the circumstances when he executed a written waiver, did not request his attorney's presence, and voluntarily made a statement to the FBI agent investigating the robbery on the occasions of subsequent meetings, especially when his attorney knew of the interviews and consented to them. No objection was made to the agent's testimony about Bentley's statements, furthermore, by defendant-appellant's counsel at trial. *See Michigan v. Moseley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

Even if the majority were correct that the record did not enable this court to make a determination of a knowing and intelligent waiver, I would not find that appellant's failure to object on this ground at trial constituted "plain error" pursuant to Fed.R.Crim.P. 52. I would therefore find that appellant could not raise the issue on this appeal.

Finally, in view of the clear and convincing nature of the proof in this case presented by the prosecution, and no contrary evidence presented by the appellant, I would hold that any error made in admission of Bentley's statements against his interest was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *United States v. Charlton,*

565 F.2d 86, 92 (6th Cir.1977). In my view, the evidence of appellant's guilt was overwhelming. The accomplice in the robbery identified appellant, and his testimony about the circumstances was corroborated by several witnesses. Appellant wore no mask; he had long, flowing hair, and the two used a distinctive, easily recognizable care in effectuating the robbery and the get-away.

The accomplice and appellant were fellow employees and appellant's counsel conceded that appellant cooperated and pleaded guilty to a prior similar charge, involving robbery of a savings and loan, in which the accomplice was also apparently involved. Appellant had changed his appearance substantially when he was at trial with a "close-cut haircut," (Jt.App. at 84) in contrast to his long hair[1] at the time of the robbery. Yet appellant at trial was unequivocably identified by an eyewitness, despite the changed appearance, after he had on the day of the robbery a face-to-face confrontation of about ten minutes.

Accordingly, I would affirm the conviction in all respects.

---

1. One witness described the suspect as having hair "a little longer than shoulder length." (Jt. App. at 71).