GOVERNMENT OF THE VIRGIN ISLANDS, Appellee

v.

CHARLES LEONARD, Appellant

No. 76-1655

United States Court of Appeals

Third Circuit

Argued December 7, 1976

Filed January 24, 1977

MICHAEL L. RANKIN, ESQ., Acting Federal Public Defender, St. Thomas, V.I., *for appellant*

ISHMAEL A. MAYERS, ESQ., St. Thomas, V.I., *for appellee*

Before SEITZ, *Chief Judge*, GIBBONS and HUNTER, *Circuit Judges*

HUNTER, *Circuit Judge*

Charles Leonard was convicted of aiding and abetting Herbert Williams in embezzling some 49 rolls of chicken wire from the storeroom of the Civil Defense Office on St. Thomas. He appeals from the judgment on the verdict of guilt. For the reasons that follow, we reverse.

## I.

On August 4, 1975, one Edmond A. Penn became Director of the Office of Civil Defense and Emergency Services for the Virgin Islands. At that time, the Civil Defense Office also comprised a Deputy Director, two secretaries and a Communication Officer Technician—Herbert Williams. Upon taking over as Director, Mr. Penn was given no inventory of the Office's various emergency supplies. He asked Herbert Williams to conduct an inventory of the Office's storeroom on St. Thomas, and Williams did so during the last week of August, 1975.[1] According to that inventory, the St. Thomas storeroom contained some 62 rolls of chicken wire. Civil Defense kept this wire in case war or other emergency cut the islands off from normal sources of food; Civil Defense would then distribute the wire to local fishermen, who would fashion fish traps and help sustain the islands' population during the emergency.

On some nine or ten occasions in the fall of 1975, Williams entered the Civil Defense Office at night, obtained the keys to the storeroom from the filing cabinet where they were kept,[2] and took from two to four rolls of the chicken wire. He sold the wire to fishermen for $100 a roll, a price far below actual cost. On several occasions, Leonard, together with Williams, left the company of local fishermen and returned to the group in Leonard's taxi with chicken wire. Leonard also participated in several sales to the fishermen.

On November 23, 1975, Williams set fire to the storeroom in an attempt to conceal his misdeeds. The investigation of the fire revealed that many rolls of wire were missing. All

---

[1] Mr. Penn testified that Williams was "responsible for keeping inventory of our supplies," but there is no evidence that Williams took any inventories before or after the one taken at Penn's express request in August, 1975.

[2] All Office employees, including the secretaries and part-time volunteers, knew where the keys were kept.

of the Civil Defense employees were interrogated regarding the missing wire, and under questioning Williams admitted having taken it and having started the fire.

By information, Williams was charged with arson, grand larceny, and embezzlement. Leonard was charged with aiding and abetting[3] Williams in the commission of grand larceny[4] and aiding and abetting in the commission of embezzlement.[5]

After the Government rested, both defendants moved for a judgment of acquittal on the embezzlement charges, contending that there was no evidence to support the charges. The court denied the motion. The jury found Williams guilty of arson and both Williams and Leonard guilty of embezzlement; no findings were made with respect to the larceny charge. On appeal, Leonard insists that there was no evidence to support the jury's findings of embezzlement.

---

[3] Under 14 V.I.C. § 11, an aider and abettor is guilty as a principal:

§ 11. Principals

(a) Whoever commits a crime or offense or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another person would be a crime or offense, is punishable as a principal.

(c) Persons within this section shall be prosecuted and tried as principals, and no fact need be alleged in the information against them other than is required in the information against the principal.

[4] 14 V.I.C. § 1083:

§ 1083. Grand larceny

Whoever takes property—

(1) which is of $100 or more in value; or

(2) from the person of another—

commits grand larceny and shall be imprisoned for not more than 10 years.

[5] 14 V.I.C. § 1089:

§ 1089. Embezzlement by public and private officers

Whoever, being an officer of the Virgin Islands or a subdivision thereof, or a deputy, clerk, or servant of such officer, or an officer, director, trustee, clerk, servant, attorney, or agent of any association, society, or corporation (public or private), fraudulently appropriates to any use or purpose not in the due and lawful execution of his trust, any property which he has in his possession or under his control by virtue of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, is guilty of embezzlement.

## II.

Title 14, section 1089 of the Virgin Islands Code forbids embezzlement by a public officer of "any property which he has in his possession or under his control by virtue of his trust." Leonard contends that Williams—as principal—and therefore Leonard—as aider and abettor—could not be convicted of embezzlement, because the chicken wire purloined from the storeroom was not "property which [Williams had] in his possession or under his control by virtue of his trust." Because we agree with Leonard, we must reverse.

Williams obviously did not have the chicken wire in his possession, so the critical question is whether it was under his "control" by virtue of his trust. Mr. Penn testified that Williams was not authorized to place items in or remove them from the storeroom, or to exercise dominion over the contents of the storeroom in any way. Williams had been authorized, on at least one occasion, to enter the storeroom, but only for the purpose of noting the contents, not for disposing of them in any fashion. He knew where the storeroom keys were located, but so did the secretaries and part-time volunteers, who also were not authorized to use the keys without permission. Such knowledge scarcely amounts to "control" over the contents of the storeroom. Moreover, Williams came like a thief in the night, entered the storeroom in the same manner as anyone who had accidentally discovered the location of the keys, and removed the wire rolls.

These facts convince us that the elements of embezzlement were not made out. Mere access to the storeroom was not sufficient to invest "control" in Williams. See, e.g., Colip v. State, 153 Ind. 584, 55 N.E. 739 (1899); Annotation, Distinction Between Larceny and Embezzlement, 146 A.L.R. 532, 569–73 (1943). Williams' crime was similar to that of a janitor, entrusted with the key to an office, who

takes an item left lying on a desk. And under any statutory system that differentiates between larceny and embezzlement, as does the Virgin Island Code, the janitor's crime is the former. W. LaFave & A. Scott, Criminal Law § 89, at 650–51 (1972).

The district court clearly recognized this distinction in its charge to the jury:

> Now, let's make a distinction between embezzlement and larceny. Let us say I work for the Chase Manhattan Bank, I am a teller. Somebody comes in, they deposit with me $100. Now, I have received that $100 only because I am the teller employed by the bank. In this position of trust I am required to make out some notes on the deposit slip, give them a copy, file the bank's copy here, put the money in the drawer. But what I do, I probably write something wrong on the slip, put the money in my pocket. This is embezzlement, because I obtained that money only because it came to me in the course of my employment and I put it to a use and purpose to which it was not supposed to have been put. All right, I am still employed by the Chase Manhattan Bank, I am still the teller, but one of my duties as teller of that bank is to open the vault in the morning. Now, I know it does take two or three persons to open the vault, let's say I can open it alone, I have the key to the door. At night when the bank is closed, I open the bank, I go into the vault and I take out the $100. Now, I didn't come into possession of that money by virtue of my employment, I am stealing, this is larceny, that is the difference.

Tr. at 192–93. It is apparent that the district court's illustration of larceny fits almost perfectly the actions of Williams in this case. Like the court's bank teller, Williams returned after hours and opened the storeroom, taking property out otherwise than "by virtue of his trust." There simply was no evidence that he took the wire from the storeroom in the course of his duties. Hence, the defense motion for a judgment of acquittal on the embezzlement charges should have been granted.

In an era when more and more jurisdictions are consolidating larceny and embezzlement under a single statute forbidding theft, see, e.g., 18 U.S.C. § 659 (punish-

ing anyone who "embezzles, steals, or unlawfully takes, carries away, or conceals, or by fraud or deception" goods moving in interstate commerce), it may appear unfortunate that the result we reach in this case serves to free a defendant who may well be guilty of some sort of wrongful conversion. But the fact is that the Virgin Islands have not consolidated their statutes governing larceny and embezzlement, and we are constrained to observe the traditional procedural strictures with respect to conviction of one crime when the proof shows another. See, e.g., 3 C. Torcia, Wharton's Criminal Procedure § 509 (12th ed. 1975); cf. Moore v. United States, 160 U.S. 268 (1895) (where neither embezzlement nor larceny clearly charged in indictment, conviction for embezzlement must be reversed, despite proof of some form of wrongful conversion). Compare United States v. Petti, 459 F.2d 294 (3d Cir. 1972) (holding that one charged with embezzlement under 18 U.S.C. § 659 could properly be convicted where facts established larceny, since § 659 covers both).[6] Moreover, this was not a case in which the subtlety of the distinctions between the crimes confused the court, see S. Kadish & M. Paulsen, Criminal Law and Its Processes, 647 (2d ed. 1969); indeed, the court in its charge, quoted above, quite clearly recognized the distinctions, which, on the state of the evidence, were applicable in this case.

For the foregoing reasons, the judgment of conviction will be vacated and the case remanded with instruction to enter a judgment of acquittal on the charge of aiding and abetting embezzlement.

---

[6] The consolidation of larceny and embezzlement under a single statutory heading has not created the same difficulties as the consolidation of theft offenses with the more distinct crime of receiving stolen property. See, e.g., United States v. Trzcinski, No. 76-1222 (3d Cir., Dec. 2, 1976).