**UNITED STATES of America, Appellee,**

v.

**James David DOLLARD, Appellant.**

No. 85–5042.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 11, 1985.

Decided Dec. 30, 1985.

Dan T. Coenen (Robinson, Bradshaw & Hinson, P.A., Charlotte, N.C., on brief) for appellant.

Kenneth P. Andresen, Chief Asst. U.S. Atty., Charlotte, N.C. (Charles R. Brewer, U.S. Atty., Asheville, N.C. on brief) for appellee.

Before HALL and SPROUSE, Circuit Judges, and BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.

K.K. HALL, Circuit Judge:

James David Dollard appeals his conviction by a jury of embezzling postal property in violation of 18 U.S.C. § 1709. We reverse and remand the case for a new trial.

## I.

Dollard, who has a hearing and speech impairment, was employed by the United States Postal Service in Charlotte, North Carolina, as a postage due clerk. He worked from 12 midnight to 8:30 a.m. sorting postage-due mail for delivery.

The evidence adduced at appellant's trial shows that in June, 1984, Dollard's supervisor, David C. Ball, noticed that certain items of sample mail were missing.[1] He suspected that appellant was taking them after seeing cases of sample mail in Dollard's car on several occasions and seeing Dollard on another occasion with a packet of first class mail as he was about to leave the building. Because of these incidents, Ball notified U.S. Postal Inspector John Bryant about the matter. Soon thereafter, Ball noticed another case of sample mail missing from the work floor, which again he saw in Dollard's automobile.

On July 21, 1984, Inspectors Bryant, D.G. Sherrow, and William Martin entered the lookout gallery of the office where Dollard worked for purposes of conducting surveillance. Dollard reported for work that evening at midnight. During the course of the surveillance, appellant was twice seen leaving his work station, going to the sample mail area, and placing packages of sample mail first into a utility cart and then into a Dempster dumpster located next to a loading dock. At 4:00 a.m., Dollard took his lunch break and left the building in his car. He returned to work at approximately 4:30 a.m., at which time Inspector Bryant approached appellant, identified himself, and told Dollard that he had seen him taking the sample mail.

Claiming that he had taken only empty boxes, Dollard took Inspector Bryant to his automobile and showed him an empty box. Inspector Bryant then took Dollard to the

---

1. Sample mail includes those items of commercial sample products which are delivered by the post office to residents as part of a company's promotional campaign. Such items are deliverable items until management determines that the products have been delivered by the mail carriers. Excess items are disposed of pursuant to postal regulations. If such items are usable or are of value, they are typically donated to charity. Postal regulations prohibit employees from taking sample mail.

supervisor's office, where he gave him Postal Form 1067, entitled "Warning and Waiver of Rights." According to Inspector Bryant's trial testimony, Dollard read the form, said that he understood it, then dated and signed both the warning and waiver portions.[2] Inspector Bryant testified that after a few minutes Dollard asked to speak with him alone and subsequently admitted that he had taken the samples to his home during his lunch break. Appellant and Inspector Bryant then went to Dollard's home, where eighty-six cartons of sample sanitary napkins were recovered.

On November 5, 1984, Dollard was indicted under 18 U.S.C. § 1709 on one count of embezzlement of sample mail. At trial, the first witness called by the government was Inspector Bryant. When the Assistant United States Attorney began eliciting testimony from him concerning Dollard's confession, appellant's counsel objected and was permitted to conduct outside the jury's presence a voir dire examination of two witnesses, Judy Barbee and Inspector Bryant.

Barbee, a clerk in the United States Attorney's Office, had been present when, before trial, Dollard's counsel had reviewed the government's file, which included the "Warning and Waiver of Rights" form signed by his client. Barbee testified that at the time defense counsel had reviewed

the file it contained a report dated August 1, 1984, from Inspector Bryant to the United States Attorney, which summarized the events leading up to Dollard's admission that he had taken the samples.[3]

On voir dire examination of Inspector Bryant, defense counsel questioned the witness, *inter alia*, concerning (1) whether Dollard had requested the presence of either an interpreter or a union representative during his discussion with the postal inspector, and (2) whether Dollard's request to speak with Inspector Bryant was prompted by any promise that he would not lose his job or be indicted. Inspector Bryant responded in the negative to both questions. After completing his examination of Inspector Bryant, defense counsel next asked to call Dollard on voir dire. The trial court denied the request, stating that "You do that on your own defense if you want to."

The jury then returned to the courtroom and the government resumed its direct examination of Inspector Bryant, who was permitted to testify before the jury about Dollard's confession and the surrounding circumstances. On cross-examination, defense counsel again questioned Inspector Bryant concerning whether any promises had been made to induce appellant to confess and whether Dollard had requested an interpreter or union representative before

---

**2.** The warning portion of the form stated as follows:

BEFORE YOU ARE ASKED ANY QUESTIONS, YOU MUST UNDERSTAND YOUR RIGHTS.

You have a right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

I have read this statement of my rights (This statement of my rights has been read to me) and I understand what my rights are.

The waiver portion stated that:

I am willing to discuss subjects presented and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

**3.** Defense counsel's initial objection was based on his assertion that the file contained only the signed "Warning and Waiver of Rights" form but no written statement or confession. Inspector Bryant's August 1, 1984, report specifically stated that Dollard did not furnish a written statement in this matter and the trial court overruled defense counsel's objection that he had not been furnished with all of the information contained in the government's records pursuant to Fed.R.Crim.P. 16.

speaking to the postal inspector. As he had done previously outside the jury's presence, Inspector Bryant again denied any such allegations.

The government called several additional witnesses, including Sherrow, Martin, and Ball, to corroborate the testimony of Inspector Bryant and recount the events leading up to Dollard's arrest. When the jurors were excused for lunch and before the defense had presented its case, the trial judge stated for the record that he found Dollard's confession to be voluntary:

> For the record, I think I probably forgot to say the Court found the statements, incriminating statements or otherwise, made by the defendant to Mr. Bryant, were voluntary, I think, under all the surrounding circumstances, including the fact he knew the nature of the offense of which he was suspected. He was advised he was not required to make a statement, and he was advised of his right to assistance of counsel. So, the Court did find that those statements were voluntary, although I may have failed to put it on the record. I will do that at this time.

At the close of the government's case, defense counsel moved for judgment of acquittal. Following the denial of this motion, Dollard took the stand to testify in his own defense. According to Dollard, he was nervous and afraid at the time he gave his statement and had asked for an interpreter several times. Dollard testified that Inspector Bryant had promised him that he would not lose his job or "go to Court" if he signed the statement. Dollard further testified that he did not understand the paper which he signed, that he felt he was being forced to sign it, and that the atmosphere was "almost like a Gestapo situation." Dollard also admitted that he had taken the mail, explaining that other employees also did so and that he considered taking samples permissible. According to appellant, he took the samples to give away to deaf women.

Following Dollard's testimony, the defense called several additional witnesses, including other postal employees, to testify for appellant. At the close of all of the evidence, the trial court reaffirmed its previous finding that Dollard's statement to Inspector Bryant was voluntary, "in light of the testimony which has been received from the postal inspectors and from Mr. Dollard." The matter then went to the jury, which found Dollard guilty. This appeal followed.

## II.

On appeal, Dollard raises two contentions. He argues that he was improperly indicted and convicted for embezzlement under 18 U.S.C. § 1709. He also argues that the district court erred in its handling of the testimony concerning the voluntariness of his confession. We conclude that appellant was properly indicted under 18 U.S.C. § 1709; however, we agree that the trial court's refusal to permit Dollard to testify outside the jury's presence about the circumstances surrounding the giving of his statement to Inspector Bryant constitutes reversible error.

The statute under which Dollard was indicted, 18 U.S.C. § 1709, is entitled "Theft of mail matter by officer or employee," and provides as follows:

> *Whoever, being a Postal Service officer or employee, embezzles* any letter, postal card, package, bag, or mail, or any article or thing contained therein entrusted to him or which comes into his possession intended to be conveyed by mail, or carried or delivered by any carrier, messenger, agent, or other person employed in any department of the Postal Service, or forwarded through or delivered from any post office or station thereof established by authority of the Postmaster General or of the Postal Service; *or steals,* abstracts, or removes from any such letter, package, bag, or mail, any article or thing contained therein, shall be fined not more than $2,000 or imprisoned not more than five years, or both.

(Emphasis added). According to appellant, the government failed to prove embezzlement within the meaning of § 1709, be-

cause he, as a postage-due clerk, was not responsible for sample mail as part of his job duties and thus never had prior lawful possession of the goods he took. Appellant argues that mere access to the property as an incident of employment is not sufficient to sustain a conviction for embezzlement, *Government of Virgin Islands v. Leonard*, 548 F.2d 478 (3d Cir.1977); *United States v. Sayklay*, 542 F.2d 942 (5th Cir. 1976), and although he may be guilty of theft or larceny under some other statute, he cannot be convicted of embezzlement under 18 U.S.C. § 1709.

■ We find no merit in appellant's contention. On its face § 1709 demonstrates that it is intended to cover a postal employee who embezzles or *steals* any mail. Thus, the activity charged in this case clearly falls within the purview of § 1709 and Dollard's indictment under that statute was not erroneous.

### III.

■ Turning now to the voluntariness issue, we agree with appellant that the trial court's handling of the question of voluntariness surrounding Dollard's statement (1) denied him his right to testify about the confession outside the presence of the jury; (2) failed to afford him a fair hearing and reliable determination on the voluntariness issue; and (3) abridged his Fifth amendment privilege against self-incrimination by effectively coercing him to testify at trial. In *United States v. Carignan*, 342 U.S. 36, 72 S.Ct. 97, 96 L.Ed. 48 (1951), the Supreme Court found reversible error when the trial court refused to permit a defendant to testify outside the jury's presence to facts surrounding the involuntary nature of his confession. Moreover, in *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), the Supreme Court held that a criminal defendant has a "constitutional

right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness."

■ In addition, a defendant may not be compelled to give up his Fifth amendment privilege against self-incrimination in front of the jury in order to contest the voluntariness of his confession. *Lindsey v. Craven*, 521 F.2d 1071, 1073 (9th Cir.1975). *Cf. Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) (criminal defendant's testimony at a Fourth amendment suppression hearing could not be used against him at trial without violating his Fifth amendment privilege against self-incrimination). As this Circuit clearly stated in *United States v. Inman*, 352 F.2d 954, 956 (4th Cir.1965):

> To assure the accused complete protection, the procedure should substantially be this. On proffer of the confession, even though there be no objection, the court should let the jury withdraw, and then take evidence upon the confession and its factual setting. On this voir dire the defendant may testify without prejudice to his privilege not to take the stand before the jury, but he may be examined or cross-examined only with regard to the origin and character of the confession, not upon his innocence or guilt. The court will thereupon independently determine whether the confession is admissible.

In *Inman*, the Court reversed the defendant's conviction and ordered a new trial for failure of the trial court to follow this formula.[4]

We conclude that under the circumstances presented by this case, the foregoing principles were violated. Here, defense counsel objected to the testimony of Inspector Bryant concerning the taking of Dollard's statement and was permitted to voir

---

**4.** The burden of proof for demonstrating voluntariness set forth in *Inman* was revised from a "beyond a reasonable doubt" standard to a "preponderance of the evidence" standard in *United*

*States v. Johnson*, 495 F.2d 378 (4th Cir.1974). Nevertheless, the procedure established in *Inman* for determining the voluntariness of confessions continues to be the law in this Circuit.

dire two witnesses; however, when he asked to have his client likewise testify outside the jury's presence, that request was refused. This ruling impermissibly placed Dollard in the position of having to take the stand in front of the jury in order to controvert the voluntariness of his statement to Inspector Bryant.

Under these circumstances, we cannot accept the government's argument that the error was harmless and that it can be cured by a remand for a new finding of voluntariness. In cases where the trial court's failure to permit the defendant to testify outside the jury's presence concerning voluntariness was harmless, we have affirmed a resulting conviction. *United States v. Owens*, 528 F.2d 1176 (4th Cir.1975); *United States v. Russo*, 399 F.2d 75 (4th Cir.1968) (error harmless where defendants, in taking the stand, did not testify as to any facts suggesting their statements were involuntary). We have also refused to order a new trial in a case where the trial judge, following a suppression hearing, made no finding as to voluntariness and left the question entirely for the jury's determination. *United States v. Gonzalez*, 736 F.2d 981 (4th Cir.1984). In *Gonzalez*, we found that a remand for a finding of voluntariness was sufficient to cure the trial court's error. Unlike the present case, Gonzales did not raise the issue of being compelled to testify before the jury. Moreover, although Gonzales testified at his trial, there is no indication that the district court's failure to make a finding of voluntariness in any way forced him to take the stand. The error here, however, clearly denied appellant his right under the Fifth amendment not to testify at all before the jury on the issue of guilt or innocence and thus can only be remedied by requiring a new trial.

### IV.

For the foregoing reasons, appellant's conviction is reversed and the case is remanded for a new trial.

REVERSED AND REMANDED.