928 F.2d 400
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony Girard MCCRAY, a/k/a Tracy Owens, a/k/a Charles
Owens, Defendant-Appellant.
 No. 90-5683.
 United States Court of Appeals, Fourth Circuit.
 Submitted Feb. 15, 1991.
Decided March 19, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, District Judge. (CR-90-51-A)
 Ferris R. Bond, Bond, Conte & Norman, P.C., Washington, D.C., for appellant.
 Henry E. Hudson, United States Attorney, William G. Otis, Senior Litigation Counsel, Alexandria, Va., Sean Connelly, United States Department of Justice, Washington, D.C., for appellee.
 E.D.Va.
 AFFIRMED.
 Before K.K. HALL, CHAPMAN and NIEMEYER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Anthony G. McCray appeals from a jury verdict in which he was found guilty of conspiracy to use interstate communication to demand ransom for release of a kidnapped person (18 U.S.C. Sec. 371), demanding ransom for release of a kidnapped person through an interstate communication (18 U.S.C. Sec. 875), using a facility of interstate commerce in aid of unlawful activity (18 U.S.C. Sec. 1952), possession of ransom money (18 U.S.C. Sec. 1202), and obstructing interstate commerce by extorting property through threats of violence (18 U.S.C. Sec. 1951). McCray was sentenced to a prison term of ninety-two months and a three-year supervised release. McCray noted a timely appeal. We affirm.
 
 
 2
 In December 1989, a five-year-old girl disappeared from a neighborhood Christmas party; despite an extensive search, her whereabouts remain unknown. In February 1990, the girl's mother received a telephone call during which the caller demanded $75,000 for the release of her daughter. In a second call, the caller instructed the mother to deliver the money to a location in Washington, D.C., and her daughter would be released at the nearest police department. In accordance with the caller's instructions, an undercover FBI agent went to the "drop site." Within minutes of her arrival, a call was placed to the mother's residence. That call was traced to a dorm room at Howard University. FBI agents monitoring the drop site followed a vehicle from the area to a Howard University dormitory. The agents arrested the car's occupants in front of the dorm. Other FBI agents went to the dorm room to which they had traced the telephone call. The agents found McCray and a female student in the room.
 
 
 3
 The FBI agent testified that he asked McCray if he would accompany him to his office so they could "discuss the details of why we were there." The agent informed McCray that he was not under arrest and that he would be coming voluntarily. McCray was not frisked. Another FBI agent testified that McCray was aware he was going with them voluntarily and that he "was very enthusiastic about coming down. He wanted to set things straight." He continued that McCray was not searched or handcuffed and that he sat in the front seat of the FBI car.
 
 
 4
 McCray provided no helpful information during the first hour of the interview, but, at one point, McCray could hear one of his friends in an adjacent room protesting loudly that he was not involved in the crime. At that point, the FBI agent stated that McCray should "come clear with us and tell us the truth about what really happened." McCray admitted that he had planned the extortion scheme and the FBI agent then advised McCray of his constitutional rights from a pre-printed FBI form, which McCray examined and signed. McCray then provided the details of the scheme in a subsequent interview, and he signed a written confession. The FBI agent testified that McCray had no language difficulties, that he showed no signs of intoxication, and that he was not threatened or coerced.
 
 
 5
 McCray moved that his statement be suppressed prior to trial because it was taken in violation of Miranda v. Arizona, 384 U.S. 436 (1966), and because it was involuntarily made. After an evidentiary hearing, the district court found that McCray was not in custody when he was interrogated by the FBI agent and denied the motion to suppress.
 
 
 6
 Whether an admission is voluntary or induced by duress or coercion is to be determined from the totality of the circumstances, including the setting in which the statement was obtained, details of the interrogation, and characteristics of the accused. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973); United States v. Carroll, 710 F.2d 164, 167 (4th Cir.), cert. denied, 464 U.S. 1008 (1983). Before a confession may be found involuntary and inadmissible, there must be evidence of coercive police activity even though the confession was prompted by a mental or emotional condition and was not the product of a rational mind and free will. Colorado v. Connelly, 479 U.S. 157, 165-67 (1986). The test of voluntariness is whether the confession was obtained by threats or violence, by direct or implied promises, or by exertion of improper influence. Hutto v. Ross, 429 U.S. 28, 30 (1976) (per curiam). This Court has stated that "[t]he ultimate question is whether the pressure, in whatever form, was sufficient to cause the petitioner's will to be overborne and his capacity for self-determination to be critically impaired." Ferguson v. Boyd, 566 F.2d 873, 877 (4th Cir.1977). Any statement given freely and voluntarily without any compelling influences is admissible in evidence. Miranda, 384 U.S. at 478.[1]
 
 
 7
 The government bears the burden of proving by a preponderance of the evidence that the statement was voluntary. Lego v. Twomey, 404 U.S. 477 (1972). Although an appellate court must determine independently the ultimate issue of voluntariness, the findings of the district court as to the facts surrounding the confession are to be accepted unless clearly erroneous. United States v. Locklear, 829 F.2d 1314, 1317 (4th Cir.1987) (citations omitted). Cf. Miller v. Fenton, 474 U.S. 104, 112 (1985).
 
 
 8
 After hearing testimony from FBI agents at the suppression hearing, the district court found that McCray "voluntarily accompanied the police" and that prior to the time that McCray executed the Miranda form, he was not subject to custodial interrogation. The court continued that as soon as McCray began to incriminate himself, the agents stopped him and advised him of his rights and that this was not "custodial interrogation." The district court's factual finding that McCray was not in custody is adequately supported by the record and thus is not clearly erroneous.
 
 
 9
 McCray asserts that his confession was involuntary because: the setting of the interview was the FBI office; he was not given Miranda warnings for about an hour; he was not advised of the crime under investigation; he was accused of lying during the interview; and he was "induced to confess based upon a false suggestion" that his friends (one of whom he heard yelling in an adjacent office) were at the FBI office because he would not "come clean."
 
 
 10
 The setting of McCray's interview in the FBI office is only one of the totality of circumstances to consider in determining the voluntariness of his statement. See Schneckloth, 412 U.S. at 226. The record discloses that McCray was explicitly told that he was not under arrest and that any decision to accompany the agents to the FBI office was voluntary. One agent testified that McCray "was very enthusiastic about coming down" and that "[h]e wanted to set things straight." He was never handcuffed or frisked. Nothing in the record indicates that the setting of the interview was itself coercive.
 
 
 11
 Since the record supports the district court's finding that McCray was not in custody at the time of questioning, Miranda warnings were not necessary. Therefore, McCray's claim that his confession was involuntary because he was not given Miranda warnings for about an hour is meritless. In addition, there is no constitutional requirement that a defendant be told of the crime under investigation in order for his confession to be voluntary. Colorado v. Spring, 479 U.S. 564, 577 (1987).
 
 
 12
 There is no merit to McCray's claims that his confession was involuntary because he was accused of lying or because of "false suggestions" concerning his friends, who were also being questioned at the station. Voluntariness is not equated with the absolute absence of intimidation. United States v. Pelton, 835 F.2d 1067, 1072 (4th Cir.1987), cert. denied, 486 U.S. 1010 (1988). While the agent's words may be construed as harsh, they were more truthful than coercive. For these reasons, we conclude that McCray's confession was voluntary.
 
 
 13
 Finally, McCray asserts that the district court erred "by not entering a holding which demonstrates support in the record." He contends that the court failed to "conclude in a reliable and clear-cut manner that the confession [was] voluntary." After hearing testimony in the suppression hearing, the district court stated that McCray "voluntarily accompanied the police and he was told he was not under arrest." The court found that McCray was subject to "noncustodial interrogation" and therefore denied the motion to suppress. The court also noted that McCray received Miranda warnings when he began to incriminate himself.
 
 
 14
 This Court has held that on proffer of a confession, even though there is no objection, the trial court should let the jury withdraw, and then hear evidence as to the confession and its factual setting. United States v. Inman, 352 F.2d 954, 956 (4th Cir.1965). The court then should independently determine whether the confession is admissible. Id. If the trial court is satisfied that the confession was voluntary, "he should explicitly make and include in the record a finding of that fact." Id. Although the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record "with unmistakable clarity." Sims v. Georgia, 385 U.S. 538, 544 (1967). The procedure established in Inman for determining the voluntariness of confessions continues to be the law in this Circuit. United States v. Dollard, 780 F.2d 1118, 1122 n. 4 (4th Cir.1985).
 
 
 15
 Though the district court found that McCray was subject to "noncustodial interrogation" and that he received Miranda warnings, it did not state "with unmistakable clarity" that it concluded that the confession was voluntary either at the motion hearing or at trial. But even though the district court did not fully comply with the Inman procedure, McCray is still not entitled to relief because admission of the confession was harmless error in light of the other overwhelming evidence against him. An error of constitutional magnitude does not require reversal of a criminal conviction where the error can be shown to have been harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18 (1967); Fed.R.Crim.P. 52(b). McCray's accomplice, who pleaded guilty to all of the same charges without benefit of a plea agreement, testified to McCray's involvement in the crimes. McCray's guilt was also established by the testimony of the woman whose dorm room he occupied when he was arrested and by the testimony of another accomplice. Therefore, the admission of McCray's confession was harmless beyond a reasonable doubt.
 
 
 16
 For these reasons, we affirm the conviction from which McCray appeals. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 McCray has abandoned on appeal his claim that his confession should be suppressed due to a failure to timely give Miranda warnings