RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0283P (6th Cir.)
File Name: 04a0283p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

KEVIN MARK ABELA,
    *Petitioner-Appellant,*

    *v.*
             No. 00-2430

WILLIAM MARTIN, Director,
Michigan Department of
Corrections,
    *Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-72095—Robert H. Cleland, District Judge.

Argued: April 21, 2004

Decided and Filed: August 27, 2004

Before: SILER, COLE, and CLAY, Circuit Judges.

———————

## COUNSEL

**ARGUED:** James Sterling Lawrence, Detroit, Michigan, for Appellant. William C. Campbell, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** James Sterling Lawrence, Detroit, Michigan,

for Appellant. William C. Campbell, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

   COLE, J., delivered the opinion of the court, in which CLAY, J., joined. SILER, J. (pp. 26-27), delivered a separate opinion concurring in part and dissenting in part.

———————

## OPINION

———————

   R. GUY COLE, JR., Circuit Judge. Petitioner Kevin Mark Abela, a former Michigan prisoner who was convicted of manslaughter and carrying a concealed weapon in 1991, appeals the federal district court's dismissal of his petition for a writ of habeas corpus, which he filed pursuant to 28 U.S.C. § 2254 on April 26, 1999. Petitioner contends that: (1) his Fifth Amendment rights were violated when police elicited statements from him following his request for counsel and when they interrogated him while he was allegedly intoxicated, in pain, and on pain medication; (2) his due process and Sixth Amendment rights were violated because of prosecutorial misconduct at trial; and (3) he was denied the effective assistance of both trial and appellate counsel. Respondent contends that Abela's claims are barred by procedural default.

   Because we find that Abela's claims are not barred by procedural default, and that his Fifth Amendment claim concerning statements elicited after he invoked his right to counsel is meritorious, we **REVERSE** the district court's judgment and **REMAND** to the district court with instructions to grant the writ of habeas corpus, unless the state elects to retry Abela within ninety days of the date of this opinion's entry.

# I. BACKGROUND

## A. *Factual Background*

Abela's convictions stemmed from the stabbing death of Stanley Underwood at a party in the early morning hours of May 19, 1990. Abela arrived at a party at the home of Allen Howard in Rochester Hills, Michigan, sometime during the evening of May 18. At approximately 1:00 a.m., Abela and a friend, Ronald Wright, noticed a man, J.J. Sullivan, pushing a car out of the driveway of the home. Abela confronted Sullivan and an argument ensued; it turned into a fistfight. After the fight broke up, Sullivan ran into the house, where he told his older brother, Jerry, that someone had beaten him up.

A second fight began when Jerry Sullivan and Allen Howard ran outside to confront Abela. Abela's nose was broken in the fight, which ended with Howard holding Abela down on the ground. Howard promised Abela that he would release him if he left the party immediately. Abela then left the party with Wright.

Upon reaching their car, however, Wright realized that he had forgotten his jacket at the party, and he returned to the house to retrieve it. Abela waited at the edge of the driveway. Suddenly, however, several people from the party, including Stanley Underwood, attacked Abela, knocked him down, and surrounded him. Abela was kicked and punched in the face and body. Among the group of attackers was Stanley Underwood, who, during the course of the brawl, straddled Abela's chest. Abela thereupon drew a knife from a sheath on his belt and stabbed Underwood in the chest and left arm three times. Underwood died a short time later from the stab wounds.

Abela fled to a friend's house, where he called 911 and told the operator that he had stabbed someone. After meeting the police back at Howard's house, Abela was taken to a hospital emergency room for treatment. While at the emergency

room, but before being treated for his injuries, Oakland County Police Sergeant Michael McCabe began interrogating Abela about the events leading up to the stabbing. Abela responded by stating, "maybe I should talk to an attorney by the name of William Evans," and he showed Sergeant McCabe Evans's business card. Sergeant McCabe agreed to call Evans for Abela and left the room, presumably to contact Evans. Upon returning, McCabe made no mention of Evans, and proceeded to read Abela his *Miranda* rights. Abela then signed a form waiving those rights and gave a statement to Sergeant McCabe. After being treated at the hospital, Abela was taken to the police station. He gave another statement there. In both statements, Abela admitted to stabbing Underwood, but claimed that he did so in self defense. The statements were admitted at trial and used by the prosecution against Abela.

## B. *Procedural History*

Abela was charged with second degree murder and carrying a concealed weapon. Prior to trial in the Oakland County Circuit Court, Abela's counsel filed a motion to dismiss the concealed weapon charge because the knife was not concealed – Abela carried it in a sheath attached to the outside of his belt. The trial judge granted the motion and dismissed the concealed weapon charge on September 12, 1990. On November 5, 1990 – outside the fourteen-day time limit prescribed by Mich. Ct. Rule 2.119(F)(1) – the prosecution filed a motion for reconsideration of the dismissal. Abela's counsel did not object to this motion. On June 3, 1991, the trial judge granted the prosecution's motion for reconsideration and reinstated the concealed weapon charge.

The trial commenced in June 1991. During closing arguments, the prosecutor presented a hypothetical conversation between Abela and Ronald Wright. The prosecutor stated:

Do you think when they [Abela and Wright] got back to that car they were mad as hell? Both of them got shot down, pretty damn drunk, they are pretty pissed off. They've lost the fight. They've been thrown out. They've been humiliated . They've been embarrassed. Not only that, Ron Wright says, "My damn coat's back there. Let's go get it." [Abela then replied,] "Ronnie, better take this [Abela's knife] when we go back. Ain't nobody going to kick our ass anymore. Let's go back."

This statement is the basis for Abela's prosecutorial misconduct claim, which will be discussed below.

Abela was convicted by a jury of voluntary manslaughter and carrying a concealed weapon on July 24, 1991. He was sentenced to seven to fifteen years' imprisonment for the voluntary manslaughter count, and a concurrent forty months to five years of imprisonment for carrying a concealed weapon.

Abela appealed his convictions, raising three issues in the Michigan Court of Appeals on February 17, 1992. The three issues were: (1) that his sentence was disproportionate to the crime; (2) that the trial court erred by reinstating the weapons charge; and (3) that the trial court erred by allowing the prosecution to present rebuttal testimony not raised in its case-in-chief. The Michigan Court of Appeals affirmed Abela's conviction and sentence in an unpublished disposition. *People v. Abela*, No. 144005 (Mich.Ct.App. July 22, 1994). The Michigan Supreme Court denied Abela's delayed application for leave to appeal these issues on March 31, 1995. *People v. Abela*, 448 Mich. 901, 533 N.W.2d 313 (Mich. 1995).

In August 1996, Abela filed a motion for relief from judgment in the Oakland County Circuit Court, raising six claims: (1) that his statement at the hospital was unconstitutionally elicited and admitted because Sergeant McCabe ignored Abela's request for an attorney; (2) that his

statement at the hospital was involuntary because he was injured, under the influence of alcohol, and on pain medication at the time of questioning; (3) that the trial court improperly granted the prosecution's untimely motion to reconsider the dismissal of the concealed weapon charge; (4) that the prosecutor unfairly prejudiced Abela by presenting witness testimony in his closing argument that was unsupported by the record; (5) that Abela's trial counsel provided ineffective assistance; and (6) that Abela's appellate counsel provided ineffective assistance, constituting "good cause" for Abela's failure to raise the other claims in his direct appeal. The motion was denied "for lack of merit on the grounds presented." *People v. Abela*, No. 90-101083 (Oakland County Cir. Ct. Oct. 22, 1996). Abela raised the same six issues on appeal to the Michigan Court of Appeals, which likewise denied his petition "for lack of merit in the grounds presented." *People v. Abela*, No. 200930 (Mich.Ct.App. July 22, 1997). On August 9, 1997, Abela again raised these six issues in his delayed application for leave to appeal to the Michigan Supreme Court, which denied his petition in a summary disposition, stating: "Defendant has failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D). *People v. Abela*, 457 Mich. 880, 586 N.W.2d 923 (Mich. 1998). On August 3, 1998, Abela filed a petition for certiorari with the U.S. Supreme Court, which was denied on October 19, 1998. *Abela v. Michigan*, 525 U.S. 948 (1998).

Abela was released to parole status on March 16, 1998, and discharged from parole on March 16, 2000, which terminated his seven to fifteen year sentence for manslaughter. His three to five year sentence for carrying a concealed weapon ended on October 22, 1995. However, it was on April 26, 1999, before his parole term ended, that Abela petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising most of the same claims as were in his motion for relief from judgment (except for his claim that the trial court erred in reconsidering its dismissal of the concealed weapon charge). Specifically, Abela asserted that: (1) his statement to police

at the hospital was unconstitutionally elicited and admitted because he had invoked his right to counsel; (2) his statement at the hospital was involuntary and inadmissible because he was injured, intoxicated, and on pain medication at the time of questioning; (3) the prosecutor engaged in misconduct during closing argument; (4) trial counsel was ineffective for failing to object to the prosecutor's untimely motion for reconsideration; and (5) appellate counsel was ineffective and that this constitutes "good cause" for any alleged procedural default of the preceeding claims.

The district court denied the petition for habeas relief on October 31, 2000. It held that Abela's claims were not procedurally defaulted, but that they were without merit. This Court granted a certificate of appealability on April 20, 2001, and on October 30, 2002, denied the petition as untimely, and accordingly, declined to address the merits. *Abela v. Martin*, 309 F.3d 338 (6th Cir. 2002). The Court then agreed to hear the case *en banc*, and in 2003, vacated its prior opinion and judgment, holding that Abela's habeas petition was timely. *Abela v. Martin*, 348 F.3d 164 (6th Cir. 2003) (en banc). The petition was remanded to this panel for consideration of the procedural default question and the merits, which we turn to now.

## II. ANALYSIS

### A. *Jurisdiction and Mootness*

We reaffirm our prior determinations concerning both subject matter jurisdiction and mootness. *Abela*, 309 F.3d at 343-44. This Court has subject matter jurisdiction over Abela's habeas petition, pursuant to 28 U.S.C. § 2254(a), because Abela was "in custody" at the time he filed the petition with the district court on April 26, 1999. *Jones v. Cunningham*, 371 U.S. 236, 242 (1963) (holding that petitioner who was on parole was still "in custody" for habeas purposes). Abela's release from custody and the subsequent conclusion of his parole term, after the filing of his habeas

petition, do not render moot his appeal from the district court's denial of the petition. He continues to satisfy Article III's "case or controversy" requirement because of the continuing collateral consequences to a wrongful criminal conviction. *Spencer v. Kemna*, 523 U.S. 1, 8 (1998).

### B. *Whether Abela Procedurally Defaulted on the Claims in His Habeas Petition*

Respondent contends that because the claims raised by Abela in his habeas petition were raised for the first time in his state post-conviction motion for relief from judgement – and not on direct appeal – federal review of his claims is barred by procedural default. It is well-settled that when a state prisoner has "defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred" unless the petitioner can show cause for the default and prejudice because of it, or a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

For the doctrine of procedural default to apply, there must be a state procedural rule applicable to the petitioner's claim, and the petitioner must have failed to comply with that rule. *Warner v. United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992), *cert. denied*, 507 U.S. 932 (1993). In addition, the state court must have enforced the state procedural rule to bar the petitioner's claim. Specifically, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject reviewing the petitioner's federal claims. *Coleman*, 501 U.S. at 729-30. Lastly, the state procedural rule must constitute an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). A state procedural rule is "adequate" if it is firmly established and regularly followed at the time it is applied. *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001). A state procedural rule is an "independent" ground for precluding federal habeas review

if the state courts actually relied on the rule to bar the claim at issue. As this Court has held, "a state procedural rule is an independent and adequate state ground only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

Whether a petitioner's federal habeas claim is barred because the petitioner procedurally defaulted on the claim in state court is a question of law we review *de novo. Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). The last state court from which Abela sought review, the Michigan Supreme Court, denied relief in a standard order stating that: "Defendant has failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." *People v. Abela*, 457 Mich. 880, 586 N.W.2d 923 (Mich. 1998). Respondent urges us to construe that order – and the citation to M.C.R. 6.508(D) – as an invocation of the procedural default provision set forth in M.C.R. 6.508(D)(3). M.C.R. 6.508(D) broadly pertains to motions for relief from judgment, and states in relevant part:

(D) **Entitlement to Relief.** The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion

(1) seeks relief from a judgment of conviction and sentence that still is subject to challenge on appeal pursuant to subchapter 7.200 or subchapter 7.300;

(2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the

conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

(a) good cause for failure to raise such grounds on appeal or in the prior motion, and

(b) actual prejudice from the alleged irregularities that support the claim for relief. . . .

As noted above, our task is to determine whether the state court "clearly and expressly stated that its judgment rested on a procedural bar." *Sparkman*, 94 F.3d at 202. Here, the Michigan Supreme Court only referenced M.C.R. 6.508(D), generally, as the basis for denying Abela leave to appeal the judgment of the Michigan Court of Appeals. As seen just above, M.C.R. 6.508(D) states that "[t]he defendant has the burden of establishing entitlement to the relief requested." Although 6.508(D)(1), (2), and (3) list specific procedural grounds for denying a defendant relief from judgment, these procedural grounds are not the exclusive grounds for which a court may deny relief pursuant to M.C.R. 6.508(D). A court may deny relief from judgment under 6.508(D) for the non-procedural reason that the defendant simply failed to meet his burden of "establishing entitlement to the relief requested." As such the Michigan Supreme Court's citation to M.C.R. 6.508(D) in its order denying Abela leave to appeal does not demonstrate that that court denied him leave to appeal on the basis of a procedural default, much less on the procedural ground described in M.C.R. 6.508(D)(3), which Respondent urges on this Court.

We note that in *Simpson v. Jones*, 238 F.3d 399 (6th Cir. 2000), the Sixth Circuit held that a statement by the Michigan Supreme Court that a defendant "failed to 'meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)'" constituted invocation of "an independent and adequate state procedural rule" sufficient to prevent federal habeas review. *Simpson*, 238 F.3d at 407-08. In that case, the petitioner filed two motions for collateral review in the state court following

his direct appeal. The trial court granted partial relief on the first motion and the petitioner never appealed the adverse portion of that ruling. The state trial judge explicitly denied the second motion on procedural grounds, noting that Simpson raised no issues that had not been previously addressed by the trial court and the Michigan Court of Appeals. *Id.* at 403. In addition, the court briefly addressed and rejected Simpson's arguments on the merits. Simpson then filed an application for leave to appeal to the Michigan Court of Appeals, raising the same claims he raised in the second motion for collateral review before the trial court. He also contested the trial court's procedural default determination. The Court of Appeals denied that application on the basis of M.C.R. 6.508(D). Simpson then applied for leave to appeal to the Michigan Supreme Court, based on the same issues he had raised in the Court of Appeals. This application was denied on the basis of M.C.R. 6.508(D).

Similar procedural facts existed in *Burroughs v. Makowski*, 282 F.3d 410 (6th Cir. 2002), where the state trial court denied post-conviction relief both on the merits and on the ground of procedural default, and subsequently, both the Michigan Court of Appeals and the Michigan Supreme Court denied Burroughs's application for leave to appeal, stating that he failed to establish "entitlement for relief under M.C.R. 6.508(D)." *Burroughs*, 282 F.3d at 412.

But the *Simpson* and *Burroughs* rationale is inapplicable here. In our case, the last reasoned state court judgment before the Michigan Supreme Court's order – which was the Michigan Court of Appeals' decision denying leave to appeal – was a merits determination. The Court of Appeals stated that the motion was "DENIED for lack of merit in the grounds presented." *People v. Abela*, No. 200930 (Mich.Ct.App. July, 22, 1997). Similarly, the trial court had previously denied the motion for post-conviction relief "for lack of merit on the grounds presented." *People v. Abela*, No. 90-101083 (Oakland County Cit. Ct. Oct. 22, 1996). In short, unlike in *Simpson* and *Burroughs*, the state courts below the

supreme court never invoked a procedural bar here, but rather repeatedly ruled on the merits. The procedural circumstances in this case are, therefore, materially different from those in *Simpson* and *Burroughs,* where the lower state courts actually invoked a procedural bar, making it clearer that the Michigan Supreme Court was also invoking such a bar when it referred to M.C.R. 6.508(D). But given that all of the lower state courts adjudicated Abela's case on the merits, it is not at all clear that the Michigan Supreme Court's summary order relies on a procedural bar, as opposed to the non-procedural reason that Abela simply failed to meet his burden of "establishing entitlement to the relief requested." Indeed, given the line of prior merits determinations in Abela's case, it is just as reasonable to presume that the Michigan Supreme Court's reference to M.C.R. 6.508(D) signaled its agreement with the lower courts' merits determinations as it is to presume that the reference signaled, for the first time in this case, the invocation of a procedural bar.

In short, the procedural facts of *Simpson* and *Burroughs* are distinguishable from our case. The facts in *Simpson* and *Burroughs* inspired greater certainty that the Michigan Supreme Court actually relied on a procedural bar in rendering its judgment. No such clarifying indicators are present here. Moreover, *Simpson* and *Burroughs* do not purport to eviscerate our Circuit's rule that a state procedural rule is an "independent and adequate" state ground only if the state court rendering judgment in the case "clearly and expressly stated that its judgment rested on a procedural bar." *Sparkman*, 94 F.3d at 202. *Simpson* and *Burroughs* did not hold that we should divine procedural default from any and all references to M.C.R. 6.508(D) where such default may actually have occurred, but where the procedural history raises genuine questions as to the state court's actual reliance on a procedural bar. To suggest that those cases did so hold is to accept that they invert the inquiry into whether federal review of the habeas claims is permitted. That is, pursuant to *Maupin v. Smith*, 785 F.2d 135 (1986), whether the petitioner actually failed to comply with a procedural rule is only the

predicate, not the ultimate, question before us. The ultimate legal questions are whether the court relied on and expressly invoked that procedural bar and whether it is an "independent and adequate" ground for precluding review. *See Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001). If a state court is slurring its words, our job is not to guess what it might be saying, but rather to demand that it enunciate more clearly. Here, because of numerous factors – the Michigan Supreme Court's reference only to M.C.R. 6.508(D), the absence of a clear and express invocation of a procedural bar, and the plausibility, based on the prior state courts' merits rulings, that the Michigan Supreme Court, too, grounded its decision in a non-procedural reason based on Abela's failure to "establish[] entitlement to relief" – we cannot find that M.C.R. 6.503(D)(3), the state procedural rule urged by Respondent, was actually relied on by the Michigan Supreme Court in this case. For the same reasons, we cannot find that M.C.R. 6.503(D) constitutes an adequate and independent basis for the state supreme court's decision here.

Accordingly, we hold that the claims raised by Abela in his habeas petition were not procedurally defaulted and we turn now to the merits of the petition.

## C. *Standard of Review*

We review *de novo* the decision of the district court to deny habeas relief. *Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000). However, federal review of the state court's decision is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-32, 110 Stat. 1214 (1996). Pursuant to AEDPA, habeas relief may not be granted with respect to any claim adjudicated on the merits in the state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding." 28 U.S.C. § 2254(d)(1)-(2). In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court determined that a state court's decision is contrary to clearly established federal law when it fails to consider a rule of law that is embedded in the Supreme Court's jurisprudence at the time the state conviction became final. *Williams*, 529 U.S. at 380. In defining "clearly established law," the Supreme Court held that "rules of law are sufficiently clear for habeas purposes even when they are expressed in terms of a generalized standard rather than as a bright-line rule." *Id.* at 382. The *Williams* court further held that a state court unreasonably applies clearly established Supreme Court precedent when it correctly identifies the governing legal principle in the case, but unreasonably applies that principle to the facts of the defendant's case. *Id.* at 413.

## D. *Abela's Interrogations by Police and the Trial Court's Admission of the Statements*

### 1. *Whether Abela's Statements Were Elicited in Violation of His Fifth Amendment Right to Counsel*

Abela's first claim concerning his statements is that they should have been suppressed because they were elicited in violation of his Fifth Amendment right to counsel.

The Fifth Amendment to the U.S. Constitution guarantees that "no person . . . shall be compelled in any criminal case to be a witness against himself." Although the Fifth Amendment does not guarantee a right to counsel, in *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that in certain pretrial stages – namely, custodial interrogation – the privilege against self–incrimination includes an implied right to counsel. This right is triggered when a suspect is interrogated while "in custody" or "otherwise deprived of his freedom in any significant way." *Miranda*, 384 U.S. at 444; *California v. Beheler*, 463 U.S. 1121, 1126 (1983) (holding that suspect's voluntary appearance and departure at police station for questioning was not custodial interrogation). The

Supreme Court has broadly defined "interrogation" as any police questioning of a suspect in custody "reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 301 n.7, 302, n.8 (1980).

In *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981), the Supreme Court established a bright- line rule that once a suspect is in custody and invokes the right to counsel, law enforcement may not further interrogate him until counsel has been made available, or unless the suspect initiates further conversations or exchanges with the police. To trigger the *Edwards* rule, the suspect's invocation of the right to counsel must be clear and unambiguous. *Davis v. United States*, 512 U.S. 452, 459 (1994). "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel," then cessation of questioning is not required. *Id.*

Here, the parties do not dispute that Abela was being subject to custodial interrogation at the hospital when he expressed a desire to speak to his attorney, William Evans, and then showed Sergeant McCabe Evans's business card. Although, at that point, Abela had not yet been read his *Miranda* warnings, the Fifth Amendment's implied right to counsel was triggered because Abela was being subjected to custodial interrogation by Sergeant McCabe. Accordingly, this case differs from those in which a request for counsel preceeding *Miranda* warnings is deemed ineffective. *See, e.g., Burket v. Angelone*, 208 F.3d 172, 198 (4th Cir.), *cert. denied*, 530 U.S. 1283 (2000) (request for a lawyer when suspect was not in custody and was told that he was free to leave did not render subsequent admissions inadmissible).

But the parties do dispute whether or not Abela's request for counsel was clear and unambiguous such that the *Edwards* protections were triggered and the police were compelled to cease questioning immediately. In *Davis*, the defendant was informed of his right to remain silent and to have an attorney

present during questioning, and he waived those rights. *Davis*, 512 U.S. at 454. However, approximately one-and-a-half hours into the interview, the defendant stated, "Maybe I should talk to a lawyer. *Id.* at 455. Investigators immediately inquired whether the defendant was "asking for a lawyer," or whether he was "just making a comment about a lawyer," and the defendant responded: "No, I'm not asking for a lawyer . . . No, I don't want a lawyer." *Id.* (internal quotation marks omitted). On appeal, the defendant argued that he had invoked his right to counsel and that, therefore, police questioning should have ceased. But the Supreme Court concluded that the defendant's statement – "Maybe I should talk to a lawyer" – was ambiguous, and not sufficiently clear such that a reasonable police officer in the circumstances would have understood the statement to be a request for an attorney. *Id.* at 462; *see also Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994) (holding that the defendant's statement that "it would be nice" to have an attorney was not a clear and unambiguous request for counsel). Furthermore, the investigators' questions had helped clarify that Davis was not, in fact, requesting an attorney. *Id.* at 461. ("Clarifying questions help protect the rights of the suspect by ensuring that he gets an attorney if he wants one, and will minimize the chance of a confession being suppressed due to subsequent judicial second-guessing as to the meaning of the suspect's statement regarding counsel.").

Respondent contends that Abela's case is identical to *Davis*, because, when Sergeant McCabe began questioning Abela, he responded by stating, "maybe I should talk to an attorney by the name of William Evans." Respondent argues that Abela's use of the word "maybe" is dispositive. We disagree, because in this case, unlike in *Davis*, the circumstances surrounding the statement were such that "a reasonable officer would have understood" that Abela was clearly and unequivocally invoking the right to counsel. Abela did not merely say, "Maybe I should talk to an attorney," as did the defendant in *Davis*. Rather, Abela named the specific individual with whom he wanted to speak

and then showed Sergeant McCabe the attorney's business card. McCabe said he would call Abela's attorney for him and left the room presumably to do so. Although our inquiry is an objective one, *id.* at 459, McCabe's actions confirm that a reasonable officer would understand Abela's statement to be a clear request for counsel.

The events surrounding Abela's statement sharply contrast with the facts in *Davis*, where the suspect followed his purported request for counsel with a statement indicating that he was not asking for counsel. In our case, the events surrounding Abela's request corroborate the unequivocal nature of that request. Accordingly, we reject Respondent's contention that the word "maybe" be viewed in isolation, and as dispositive of the question before us. Moreover, as we have determined in other cases, language that might be less than clear, when viewed in isolation, can become clear and unambiguous when the immediately surrounding circumstances render them so. *See Kyger v. Carlton*, 146 F.3d 374, 376 (6th Cir. 1998) (finding an unequivocal request for counsel where the defendant stated that "I would just as soon have an attorney," in response to an officer's asking him: "Would you answer some of our questions, without an attorney present?"). We note that a court's use of surrounding circumstances to evaluate the clarity of a suspect's request for counsel neither is precluded by nor alters the Supreme Court's decision declining to adopt a rule requiring officers to ask clarifying questions in these circumstances. *Davis*, 512 U.S. at 461-62.

After Abela requested counsel, the police were required to cease questioning him until he had a lawyer present. The police's failure to cease questioning Abela – that is, both (1) Sergeant McCabe's returning to Abela, reading him his *Miranda* rights, and proceeding to interrogate him at the hospital, and (2) the police questioning that continued in the morning, at the police station, after Abela was released from the hospital – violated Abela's right to counsel, the contours of which are clearly established by federal law and Supreme

Court precedent. *Minnick v. Mississippi*, 498 U.S. 146, 153-54 (1990). Furthermore, because Abela's statements were self-incriminating and among the most significant evidence marshaled against him by the state, we do not find their admission into evidence harmless.

Finally, our decision is not altered by the fact that, after requesting counsel, Abela was read his *Miranda* rights, signed a waiver of them, and proceeded to make a statement at the hospital and at the police station (where, although not re-read his *Miranda* rights, he was asked whether he "remembered" them). As just discussed, when a suspect invokes his Fifth Amendment right to counsel, police questioning must cease until counsel is present. A suspect may waive his Fifth Amendment right to counsel and the *Edwards* protections after counsel has been requested, but only if the suspect himself has initiated the conversation or discussions with the authorities. *Minnick*, 498 U.S. at 155-56. The evidence here shows that Abela did not initiate conversation with the police. Rather, he gave a statement only after Sergeant McCabe returned to the room, read him his *Miranda* rights, and resumed questioning. In *Arizona v. Roberson*, 486 U.S. 675 (1988), the Supreme Court explained that the bright-line, prophylactic *Edwards* rule protects against the inherently compelling pressures of custodial interrogation by creating a presumption that any subsequent waiver of the right to counsel at the authorities' behest was coercive and not purely voluntary. *Id.* at 685-86. Moreover, the Supreme Court expressly rejected the contention that the fresh issuance of *Miranda* warnings, after the suspect requested counsel, would overcome the pressures created by the custodial nature of the situation. Id. at 686; *see also United States v. Hall*, 905 F.2d 959, 961, 964-65, (6th Cir. 1990), *cert. denied*, 501 U.S. 1233 (1991) (holding that once an accused expresses a desire to deal with police only through counsel, a presumption is created that any subsequent waiver of the right to counsel at the authorities' behest is coercive and not purely voluntary; invoking *Roberson* in rejecting the proposition that "a fresh set of *Miranda* warnings would 'reassure' a suspect who had

been denied counsel" that "his rights would remain untrammeled.").

Accordingly, because we find that Abela's Fifth Amendment right to counsel was violated and the state courts' orders rejecting this claim are contrary to clearly established federal law, as determined by the U.S. Supreme Court, we grant Abela's request for habeas relief on this ground.

**2.** ***Whether Abela's Statements Were Unknowing and Involuntary Due to His Physical and Mental Condition***

In addition to arguing that his statements to the police were inadmissible because they were elicited in violation of his Fifth Amendment-based right to counsel, Abela also contends that the statements were unknowing and involuntary because he was intoxicated, in pain, and on pain medication during police questioning.

The state bears the burden of proving that a defendant "voluntarily, knowingly, and intelligently waived his right to silence and counsel." *United States v. Bentley*, 726 F.2d 1124, 1126 (6th Cir. 1984). This Court uses a "totality of the circumstances" to determine whether a petitioner's statements were involuntary. *Brown v. Illinois*, 422 U.S. 590 (1975). The Supreme Court has stated that, in conducting this test, a court should consider factors such as: (1) police coercion; (2) length of interrogation; (3) location of interrogation; (4) continuity of interrogation; (5) the suspect's maturity; (6) the suspect's education; (7) the suspect's physical condition and mental health; and (8) whether the suspect was advised of *Miranda* rights. *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993). Coercive police activity is a necessary element for finding that a confession was involuntary. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

When Abela arrived at the hospital, he was injured; specifically, his nose was broken. In addition, Abela contends that he drank alcohol in large quantities the night before. However, there is no evidence in the record that he was still drunk during his interrogations or that his mental faculties were in any other respect impaired during questioning as a result of alcohol or medication. Still, the record makes clear that Abela was physically uncomfortable – indeed, his taped interview at the police station had to be stopped briefly because Abela was vomiting from the effects of the previous night's alcohol.

Abela has failed to demonstrate that the state court decisions rejecting this claim were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court. As a preliminary matter, he has presented no evidence of police coercion. More importantly, although we are sympathetic to Abela's uncomfortable state in the hospital and police station, Abela has not shown that the facts of this case are equivalent to those in *Mincey v. Arizona*, 437 U.S. 385 (1978), or *Beecher v. Alabama*, 389 U.S. 35 (1967), where the U.S. Supreme Court held involuntary the statements of wounded men. In those cases, the petitioners' injuries were more severe and there was clear evidence of a coercive environment. In *Mincey*, the petitioner was seriously wounded after being shot by police during a narcotics raid on his apartment. He arrived at the hospital "depressed almost to the point of coma," according to his attending physician. *Mincey*, 437 U.S. at 398. In addition, at the time of his interrogation, his condition was still serious enough that he was in the intensive care unit. *Id.* Mincey complained to the police officer that the pain in his leg was "unbearable" and the record demonstrated that he was "confused and unable to think clearly about either the events of that afternoon or the circumstances of his interrogation." *Id.* Nevertheless, police questioning continued. Moreover, while Mincey was being questioned, he was "lying on his back on a hospital bed, encumbered by tubes, needles, and [a] breathing apparatus"

that a nurse testified was reserved for only the "more critical" patients.

*Beecher* involved an African-American petitioner accused of raping and killing a white woman. He had fled into an open field and was chased by police, who fired a bullet into his right leg. One officer then pressed a loaded gun to the petitioner's face while another officer pointed a rifle against the side of his head. The first officer then asked him whether he had raped and killed a white woman. When the petitioner responded that he had not, the officer called him a liar and said, "If you don't tell the truth I am going to kill you." *Beecher*, 389 U.S. at 36. The other officer then fired his rifle next to the petitioner's ear and the petitioner immediately confessed. Five days later, in a prison hospital, petitioner's leg had become so swollen that he required an injection of morphine every four hours (the leg eventually had to be amputated). Less than one hour after one of these injections, two Alabama investigators visited Beecher in the prison hospital. The medical assistant in charge told the petitioner to "cooperate" and, in the petitioner's presence, asked the investigators to inform him if the petitioner did not "tell them what they wanted to know." *Id.* In the course of a ninety-minute session, the investigators prepared two detailed statements similar to the confession the petitioner had given five days earlier at gunpoint. As the Supreme Court explained, "[s]till in a 'kind of slumber' from his last morphine injection, feverish, and in intense pain, the petitioner signed the written confessions thus prepared for him." *Id.* at 37.

Having studied the record on appeal with respect to Abela's physical and mental state during questioning, we do not find his situation sufficiently analogous to the grave medical conditions and coercive environments in *Mincey* and *Beecher* to warrant relief. We therefore deny this claim. However, as discussed above, we find Abela's statements improperly admitted on the ground that they were elicited in violation of his Fifth Amendment right to counsel.

### E. *Prosecutorial Misconduct*

In his next claim for relief, Abela contends that he was deprived of his right to a fair trial and due process pursuant to the Sixth and Fourteenth Amendments because the prosecutor, in his closing argument, invented a conversation between Abela and Ronald Wright. Specifically, the prosecutor stated that, prior to Wright's return to Allen Howard's house to retrieve his jacket, Abela told Wright: "Ronnie, better take this [knife] when we go back. Ain't nobody going to kick our ass anymore. Let's go back." No testimony offered at trial shows that Abela actually made this statement.

In order to prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the statements of the prosecutor "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974). In determining whether a petitioner's due process rights were violated, this Court looks at the totality of the circumstances, including:

> the degree to which the remarks complained of have a tendency to mislead the jury and prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*Kincade v. Sparkman*, 175 F.3d 444, 446 (6th Cir. 1999). It is improper for a prosecutor to argue facts not in evidence. *Berger v. United States*, 295 U.S. 78 (1935). Here, the prosecutor presented a hypothetical conversation between Abela and Ronald Wright in an attempt to explain why the two might have returned to the party after being told to leave. At trial, Abela's theory of self-defense was pitted against the prosecution's theory that Abela and Wright purposefully instigated the violent brawl that resulted in Stanley

Underwood's death. As such, the prosecutor's hypothetical was crucial to the primary theme of its closing argument and the theory of the case supporting the jury's verdict. Accordingly, and because evidence of Abela's guilt was not overwhelming, we must scrutinize the statement carefully.

We would be highly concerned if the prosecutor presented the conversation as factual. But, here, the prosecutor prefaced this part of his argument by advising the jury: "and exactly what was said probably we'll never know but probably went something like this . . . ." Because of this preface, we are persuaded that the jury would not have been misled into believing that the prosecutor was quoting from an actual conversation, but that he was rather presenting beliefs he would have the jury infer from the evidence presented at trial. *Byrd v. Collins*, 209 F.3d 486, 536 (6th Cir. 2000). In addition, when charging the jury, the trial judge reminded jurors that they "can only consider the evidence that has been properly admitted in the case" and that "[e]vidence includes only the sworn testimony of the witnesses" and any admitted exhibits, but that "[t]he lawyers' statements and arguments are not evidence."

Taken together, these factors persuade us that the prosecutor's statement, when viewed in light of the entire trial, did not deprive Abela of his due process rights.

## F. *Ineffective Assistance of Trial Counsel*

Abela's next claim is that his trial counsel was ineffective for failing to object to the untimeliness of the prosecution's motion for reconsideration, which sought to reinstate the concealed weapon charge, previously dismissed by the trial judge. To establish an ineffective assistance of counsel claim, a habeas petitioner must show that: (1) counsel's performance was deficient; and (2) counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

On November 5, 1990 – more than fifty days after the trial court dismissed the concealed weapon count – the prosecutor filed a motion for reconsideration of the dismissal order, seeking to reinstate the charge. Mich. Ct. Rule 2.119(F)(1) provides that:

Unless another rule provides a different procedure for reconsideration of a decision . . . , a motion for rehearing or reconsideration of the decision on a motion must be served and filed not later than 14 days after entry of an order disposing of the motion.

Because the prosecution filed its motion for reconsideration well outside the time limit prescribed by Michigan law, Abela contends that his counsel's failure to object to the untimely motion constituted deficient performance.

However, M.C.R. 2.119(F)(2) states that "No response to the motion [for reconsideration] may be filed. . . ." In other words, the Michigan Court Rules did not permit Abela's trial counsel to file an opposition to the state's motion for reconsideration. Accordingly, we cannot say that Abela's trial counsel was constitutionally deficient for failing to oppose the state's motion for reconsideration. It was incumbent on the trial court to reject the motion as untimely, if it saw fit to do so.

## G. *Ineffective Assistance of Appellate Counsel*

Lastly, Abela contends that his appellate counsel was ineffective for failing to raise on direct appeal in the state court the full set of claims presented in his habeas petition – that is, the claims we have discussed to this point. Abela points to the alleged ineffective assistance of appellate counsel as "cause" for any procedural default of his claims in state court. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986) (holding that if a petitioner can show that he received ineffective assistance of appellate counsel, this may excuse his procedural default of claims in the state court).

We need not determine whether the alleged ineffective assistance of appellate counsel would constitute "cause" for any procedural default because, as we determined in Part II, B. above, Abela's habeas claims were not procedurally defaulted in the state courts.

### III.  CONCLUSION

On the basis of our determinations above – (1) that we are not precluded from considering Abela's claims on the ground of procedural default and (2) that statements made by Abela and admitted at trial were unconstitutionally elicited by police after he invoked his right to counsel – we **REVERSE** the district court's judgment and **REMAND** to the district court with instructions to grant the writ of habeas corpus, unless the state elects to retry Ablea within ninety days of the date of this opinion's entry.

### CONCURRING IN PART, DISSENTING IN PART

SILER, Circuit Judge, concurring in part and dissenting in part. I concur in all of the conclusions by the majority, except those conclusions that the petitioner, Kevin Mark Abela, was denied his constitutional right to counsel under the Fifth Amendment, and that a writ of habeas corpus should issue unless the state elects to retry Abela for the same charges. The constitutional violation which the majority finds is the introduction at trial of a statement allegedly made in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). I would find that there was no constitutional violation. Therefore, I would affirm the district court in denying the writ.

Abela's statement to the officers before he was advised of his *Miranda* rights was "maybe I should talk to an attorney by the name of William Evans." Sgt. Michael McCabe offered to call Evans or another attorney, but before Sgt. McCabe attempted to call Evans or anyone else, he proceeded to advise Abela of his *Miranda* rights. It was at this point when Abela said that he would tell them everything, and did not ask for the right to consult with Evans or any other attorney. As the district court found, Abela's statements do not constitute an unequivocal request for counsel as required under *Davis v. United States*, 512 U.S. 452, 458-59 (1994). In *Davis*, the accused made a similar request that "maybe I should talk to a lawyer." The Court held that was not an unambiguous request for counsel. I would not hold that a specific naming of an attorney in this case distinguishes the facts sufficient to find a *Miranda* violation. *See Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994) (holding that the statement that "It would be nice" to have an attorney was not a clear and unambiguous request for counsel). Although the majority opinion relates that Abela handed Sgt. McCabe a business card for Evans and that McCabe left the room with the card to phone the attorney, the district court did not find those facts.

Instead, Abela testified that the card was in his wallet, which was in another room. He said that McCabe left the room after he told him about the card, but McCabe did not say anything about the card nor the attorney after that. Sgt. McCabe testified that Abela pulled out a business card from his wallet and showed it to McCabe, but McCabe did not say anything about leaving the room with the card to phone the attorney. Therefore, I would find that the facts determined by the district court below were not clearly erroneous, and I would uphold the decision by the district court that no *Miranda* violation occurred.

In sum, I would affirm the decision of the district court in denying the writ of habeas corpus.